[No. 7713. Decided April 19, 1909.]

## P. J. ELLIOTT *et al.*, *Appellants*, v. PUGET SOUND WOOD PRODUCTS COMPANY *et al.*, *Respondents*.[1]

CORPORATIONS—ACTIONS—ON BEHALF OF CORPORATIONS—STOCK-HOLDERS—CONDITION PRECEDENT—REDRESS IN CORPORATION. A court of equity will not entertain a suit by stockholders to set aside a contract made by the officers of the corporation, alleged to be contrary to the interests of the corporation and made without authority, unless it is shown in the complaint that the stockholders have sought redress in the corporation, or that it would be fruitless for them to do so.

Appeal from a judgment of the superior court for King county, Morris, J., entered September 3, 1908, dismissing an action by stockholders to set aside a contract and appoint a receiver for a corporation. Affirmed.

*Jay C. Allen*, for appellants.

*Ballinger, Ronald, Battle & Tennant* and *Walter S. Fulton* (*C. J. France*, of counsel), for respondents.

DUNBAR, J.—This is an an equitable action against a corporation. The complaint in this case is so extremely lengthy that it is impossible to reproduce it here, and it is difficult to condense the essential statements of the complaint so that it may be intelligently understood or discussed. We will, however, accept practically the appellants' statement of the case. The action was brought by several stockholders, for themselves and other stockholders, of the Puget Sound Wood Products Company, a corporation, against the corporation

[1]Reported in 101 Pac. 228.

and B. W. Bell, R. N. Calkins, and R. S. Green, as president, manager, and secretary-treasurer, respectively, of the corporation, and against the Monarch Wood Products Company, a corporation, for the purpose of testing the validity of a contract entered into between the Puget Sound Wood Products Company and the Monarch Wood Products Company, whereby, for an alleged secret process for the distillation of wood, the Puget Sound Wood Products Company gave the Monarch Wood Products Company fifty-one per cent of its stock. The action is also brought for the appointment of a receiver.

The complaint alleges that the plaintiffs are stockholders in the Puget Sound Wood Products Company, and states the organization of the Puget Sound Wood Products Company with a million shares of the par value of one dollar each, of which stock the defendants Bell and Calkins signed a subscription list for five shares each, and R. S. Green for the remaining 999,990 shares; alleges that the subscription of Green was sham, fraudulent, and not in good faith, and void; that the three above named defendants then held a meeting for the election of trustees and officers; that at said meeting the total of shares represented was fifteen, and that the remaining shares, as shown by the minutes of that meeting, had not been subscribed or represented. This was on the 2d day of February, 1907.

It alleges that on the 6th day of July, 1907, two of the defendants, Bell and Green, together with one Andrew Quigley, organized the Monarch Wood Products Company, with a capital stock of a million shares, of the par value of one dollar each; that Bell and Quigley subscribed for one share each of the Monarch Wood Products Company, Green for ten shares, the remaining shares being held by one Holbrook and the defendant Calkins; that a board of directors of the last mentioned company was elected on the same day by a meeting between the defendants Bell and Green, each representing one share only of the stock; that the defendant Green

caused himself to be elected secretary and treasurer of both corporations, and that he refused to give the bond of $5,000 required by the laws of the Puget Sound Wood Products Company; that on the day of the formation of the Monarch Wood Products Company, Bell and Green, as president and secretary of the Puget Sound Wood Products Company, without authority and without any consideration, made and entered into a written contract with themselves, as president and secretary of the Monarch Wood Products Company, for the purchase of an alleged secret process for the distillation of wood, which the Monarch Wood Products Company claimed to own, and delivered to the Monarch Wood Products Company five hundred and ten shares of the Puget Sound Wood Products Company. Plaintiffs deny that the Monarch Wood Products Company ever had any interest, right, or title to any such process, and allege that the process which it at that time claimed to hold was valueless; alleged that the plaintiffs had no knowledge, when they subscribed and paid for their stock in the Puget Sound Company, of the existence of any such contract; that such information was knowingly and wilfully withheld from all the *bona fide* owners of the stock of said company, and that the Puget Sound Company had no authority to transact business as such corporation when it entered into the contract, because at that time its stock had not been subscribed for; that the affairs of the company are being grossly mismanaged; that the company is insolvent, and that, unless a receiver is appointed, they and other *bona fide* stockholders who have paid cash for their stock would lose the whole thereof. This is, in substance, the complaint.

The defendants all appeared, and filed a demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The court took the demurrer under advisement, and proceeded to hear the affidavits filed by each party in support of, and against the appointment of, a receiver. Subsequently the court sustained the demurrer to

the complaint, and of course denied the appointment of a receiver. Afterwards the action was dismissed, judgment was entered, and plaintiffs, standing on their complaint, appealed.

It is urged that the court erred in sustaining the demurrer to the complaint and refusing to appoint a receiver. In support of the judgment of the court, it is contended by the respondents that the complaint, inasmuch as it states that the Puget Sound Wood Products Company has no right to do business in this state and asks relief, should be construed to be an action to oust the corporation from the exercise of corporate powers. It is contended that at common law a court of equity had no such jurisdiction; citing Clark & Marshall on Private Corporations, §§ 316-317; and that, inasmuch as the statutory proceeding to oust a corporation from the exercise of corporate powers in this state is by an information in the nature of *quo warranto* (Bal. Code, §§ 5780-5789; P. C. §§ 1434-1443) the action cannot be maintained, and that a court of equity, therefore, has no jurisdiction to pass upon the legality of a corporation of any kind in this state. It is also contended that, taking the complaint all together, there can be discovered no allegation that the officers of the Puget Sound Wood Products Company have acted fraudulently or with bad faith in the management of the corporation. It is also contended that this complaint was bad for the reason that one who purchased the stock of the corporation cannot complain of any transaction of that corporation unless he owned stock at the time the transaction occurred, and the complaint shows upon its face that these stockholders did not own stock at the time of the transaction complained of. It is also contended that the demurrer should have been sustained for the reason that the averments are irreconcilable and inconsistent; also, that the complaint is bad because it shows a misjoinder of actions—that it joins an action for restitution of property to a corporation with an

attack on the corporation because it was illegally incorpo-
rated.

Without passing upon these many questions, there is an-
other proposition which, it seems to us, is decisive of this
case, viz., the third proposition discussed, that a bill by one
or more shareholders in behalf of the general body cannot be
maintained unless it shows that the plaintiffs have exhausted
every means of putting the corporation in motion. This is
the rule announced in 10 Cyc. 975, and cases to sustain this
rule are cited from a great number of states, from the United
States supreme court, and from England. In fact, it is con-
ceded that this is the general rule, for reasons which may well
be imagined. There are several cases where, for reasons stated,
the stockholder is permitted to appeal to courts without first
seeking redress from the corporation itself; for instance, where
the facts stated conclusively show that an application to the
corporation would be useless. This rule is based on the familiar
doctrine that courts will not compel a litigant to do a use-
less thing; and the cases cited by appellant furnish instances
of this kind, though in the first case cited, viz., *Smith v.
Dorn*, 96 Cal. 73, 30 Pac. 1024, it was alleged in the com-
plaint that it would have been useless to make an application
to the corporation, and this was not denied by the answer,
the case not being disposed of by demurrer. Some of the
other cases come nearer sustaining the rule contended for by
the appellant.

But it is plain that this question must be decided with
reference to the facts in each particular case, and we have
been unable to find a case in which a complaint has been sus-
tained where the allegations were similar to the allegations
of the complaint under discussion. This may be a technical
rule, yet it is founded on general principles of justice and of
necessity in the transaction of corporate business, because it
is manifest that corporations which do their business through
the officers of the corporation, in the absence of fraud or op-
pression, must be allowed to transact their own business and

settle their own difficulties; the duty of the stockholder being to bow to the will of the majority as expressed through their agents.

It is said by the appellants in their brief that a corporation has no means of acting except through its agents, and that the acts complained of in this case are the acts of those agents; therefore a court of equity will interfere at the suit of a shareholder without any proof or allegation of a demand upon such agents, for a demand would ordinarily be nugatory under these circumstances. Of course, it is well answered that every grievance in a corporation may arise from the acts of its agents or directors, and that if the position of the appellants is tenable, the general rule would be destroyed. The case of *Dumphy v. Traveller Newspaper Ass'n.*, 146 Mass. 495, 16 N. E. 426, presents the reason for the general rule very aptly, when it says:

"Courts of equity are swift to protect helpless minorities of stockholders of corporations from oppression and fraud of majorities. But the legal relations into which the members of a corporation enter require them to seek redress of supposed wrongs done them as stockholders from its officers, and from the corporation itself, before applying elsewhere. . . . Stockholders in a corporation impliedly agree, when they join it, to act in the corporate business through officers chosen to represent them, or by vote at meetings of the members regularly called; and so, if they deem themselves aggrieved as shareholders by the dealings of others with it, or by the acts of its managers, they are bound to seek their remedy through corporate channels; First, by application to the officers in charge; and, failing there, secondly, to the corporation itself, at a meeting of its members. If they can obtain justice at the hand of neither, the courts are open for their relief. It would be contrary to the fundamental principles of corporate organizations to hold that a single shareholder can at any time launch the corporation into litigation to obtain from another what he deems to be due it, or to prevent methods of management which he thinks unwise."

In this case there is no allegation that any application had been made to either the directors or the stockholders of the

corporation. To the same effect is *Wolf v. Pennsylvania R. Co.*, 195 Pa. St. 91, 45 Atl. 936.

*Hawes v. Oakland*, 104 U. S. 450, 26 L. Ed. 827, is a leading case on this subject. Justice Miller, in a very learned and exhaustive review of the authorities, both American and English, after setting forth in detail what must exist as the foundation of a suit in equity (and many of those conditions are such as are described in the complaint in this case) proceeds as follows:

"But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest not a simulated effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court."

From an examination of the authorities cited and discussed in this case, and from such other authorities as we have had access to, we are of the opinion that in this particular, at least, the complaint does not state a cause of action. Of course, it is not material upon what ground the court sustained the demurrer. The demurrer being properly sustained, it follows naturally that no error was committed in not appointing a receiver.

The judgment will be affirmed.

MOUNT, CROW, FULLERTON, CHADWICK, and GOSE, JJ., concur.