[No. 7949.   Department Two.   May 25, 1909.]

WILLIAM T. WRIGHT et al., Appellants, v. TACOMA GAS & ELECTRIC LIGHT COMPANY et al., Respondents.[1]

CORPORATIONS — STOCKHOLDERS — MEETINGS—NOTICE.   The undisclosed owner of corporate stock is not entitled to notice of a stockholders' meeting, where the stock stood in the name of his brother who managed it and was notified and appeared by proxy and voted at the meeting.

CORPORATIONS—SUITS BY STOCKHOLDERS—EQUITY — LACHES.   Minority owners of corporate stock are guilty of laches precluding them from maintaining an action to set aside a sale of all the corporate assets to another company, where it appears that they delayed six months before beginning suit, during which time they were waiting to see whether they could make a favorable sale of bonds of the old company held by them, and that during such time the new company had issued and sold thousands of bonds and expended a great amount of money in alterations and completing large operations.

[1]Reported in 101 Pac. 865.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 7, 1908, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action to set aside a sale and conveyance of the property and assets of a corporation, and for an accounting. Affirmed.

*E. R. York* and *T. W. Hammond,* for appellants.

*B. S. Grosscup* and *W. C. Morrow,* for respondents.

DUNBAR, J.—This is a suit in equity, brought by plaintiffs to set aside a sale and conveyance, made by the Tacoma Gas & Electric Light Company, of all its property, franchises, and assets, to the Tacoma Gas Light Company, made against the protest of minority stockholders; and for the restoration to the Tacoma Gas & Electric Light Company of all of its property so sold, for an accounting, and general equitable relief. Upon a trial by the court, a decree was entered sustaining the sale and conveyance made and dismissing the suit. From that decree plaintiffs appeal.

The Tacoma Gas & Electric Light Company was a Washington corporation, having a capital stock of $350,000, of which $300,000 was issued, and was engaged in the business of the manufacture, distribution, and sale of gas to the inhabitants of the city of Tacoma, under a franchise from the city of Tacoma. It had, under its charter provisions, other rights which, with the view we take of the question of estoppel, it is not necessary to set forth in this statement. On May 23, 1906, the Tacoma Gas Light Company was organized, and on June 12, a meeting of the stockholders of the Tacoma Gas & Electric Light Company was held and a resolution was adopted by a majority vote of the stockholders ratifying and confirming the action of the trustees of the company taken on the preceding day, directing that all of the property, franchises, and assets of the old company be conveyed to the new company, which has ever since been in possession and control of the same. In the following week

the entire property and assets of the old company were conveyed to the new company by deed. At the time of the stockholders' meeting and thereafter until about November 1, 1906, the appellant C. B. Wright was in Europe, and it is claimed by him that he had no notice of the meeting, and did not know of the action taken at the stockholders' meeting until two or three months after; that he never consented to or acquiesced in that action, or the sale and conveyance made by the old company. One Seymour owned all the shares of the stock of the old company excepting the fifty shares owned by the appellants. Bonds of the new company were issued and sold, and the new corporation proceeded to do the business which the old corporation had theretofore done.

We will not enter into a discussion of the merits of this case, for we are of the opinion that, whatever right the appellants may originally have had to question the validity of the sale made by the majority stockholders has been lost by their laches. The court found that the appellants had been notified of the action of the majority stockholders in adopting the resolution to sell, and we think the record sustains such finding. It is stoutly contended by appellants that C. B. Wright, who at the time of the aforesaid action was in Paris, knew nothing of the transaction until shortly before this action was commenced; but it is shown by a letter from William T. Wright to appellants' attorney, E. R. York, that, in July, 1906, William T. Wright had neglected to answer York's letter of June 14, until, as he says, "I could hear from my brother who owns half the stock" in the Tacoma Gas Company, "and is in Europe." The reasonable interpretation of this letter is that he had heard from his brother before answering York's letter. It also appears that Mr. Seymour had called on C. B. Wright, and talked over the business of the corporation generally. The whole record convinces us that C. B. Wright was duly notified of the sale of the stock.

But, even conceding that he was not notified, he had no standing which would have entitled him to notification. If he

was an owner at all, he was an undisclosed owner, for it is conceded that the stock was issued to, and stood in the name of, William T. Wright, who managed it and who employed attorney York to appear at the stockholders' meeting and represent the fifty shares of stock. York did appear by proxy for William T. Wright, and represented, not half of the stock of the appellants, but all of it, and voted it all against the resolution, and protested against the sale in the name of all the stock. This not only appears from the testimony, but is also one of the allegations of the complaint. So that it appears ample notice was given, and all the notice that could have been given under the circumstances.

So that the question under consideration is, have the appellants been guilty of negligence in not more promptly bringing this action. The notice given to the stockholders was on May 23, 1906. The stockholders' meeting was on the 12th day of June, 1906, when the resolution of sale was ratified, approved, and confirmed. This action was brought on December 13, 1906, six months after the action complained of. It is the law of this state that the statute of limitations cannot be relied upon in a case of this kind, but that parties who are seeking equitable relief must proceed within a reasonable time. It is also established by the law generally that the right of a dissenting stockholder may be lost by laches. 2 Cook, Stockholders (3d ed.), par. 733. It is also stated, in the same authority:

"If it is evident that the stockholder is waiting to see whether the unauthorized act would be profitable to the corporation, the court will refuse to grant him any relief. So, also, if the stockholder, after a full knowledge of the facts, stands by and allows large operations to be completed or money expended or alterations to be made before he brings suit, he is guilty of laches, and his remedy is barred."

That, it seems to us, is what was done in this case, though in a different way. It developed in the trial of the case that the Wright estate, in which the appellants are interested, was the owner of $275,000 worth of bonds of the original com-

pany, viz., the Tacoma Gas & Electric Light Company, and that this investment was their real interest in this transaction, the fifty shares having been bought for the purpose of giving appellants a better opportunity to guard the interests of those bonds; and it plainly appears from the record that could these bonds have been sold to suit the appellants, this suit would not have been brought, and that the six months' time which intervened between the sale of the stock of the corporation and the bringing of this action was an experimental season on that question; that, therefore, the appellants brought themselves within the reason of the rule above announced. That large operations had been completed and a great amount of money expended and alterations made, is patent from the record in this case. Thousands of bonds were sold, and not less than a million dollars was involved. The rule is based upon the broadest principles of equity, and is intended for the protection of innocent purchasers. In cases of this kind, transactions are of great magnitude; bonds are bought by strangers in all stations in life; and to place innocent investors in peril, justice demands that prompt action should be taken.

As to the time that has elapsed, it is true that in most of the cases which are cited by the textwriters a longer period had elapsed in which it was held that the applicants for relief had been guilty of negligence. But the period must be determined by the circumstances of each particular case. This doctrine is laid down by the supreme court of the United States, in *Sullivan v. Portland etc. R. Co.*, 94 U. S. 806, 24 L. Ed. 324, where the court, in discussing this question, said:

"To let in the defence that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive, and refuse relief. Every case is governed chiefly by its own circumstances; sometimes the analogy of the statute of limita-

tions is applied; sometimes a longer period than that prescribed by the statute is required; in some cases a shorter time is sufficient; and sometimes the rule is applied where there is no statutable bar. It is competent for the court to apply the inherent principles of its own system of jurisprudence, and to decide accordingly;"

quoting from *Smith v. Clay*, Ambler (Eng. Ch.) 645, where it is said:

"A court of equity, which is never active in giving relief against conscience or public convenience, has always refused its aid to stale demands where a party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced; and, therefore, from the beginning of this jurisdiction there was always a limitation to suits in this court."

Under all the circumstances of this case, we think it would be inequitable to permit the appellants at this time to disturb the existing relations of the corporation.

The judgment of the lower court is therefore affirmed.

RUDKIN, C. J., CROW, PARKER, and MOUNT, JJ., concur.