[No. 10983. Department One. April 21, 1913.]

BERGMAN CLAY MANUFACTURING COMPANY, *Appellant*, v. M. L. BERGMAN *et al.*, *Respondents*.[1]

RECEIVERS—APPOINTMENT—GROUNDS. The power to appoint a receiver must be exercised with caution, and an appointment made only when there is no other adequate remedy.

CORPORATIONS — RECEIVERS — GROUNDS — COLLECTING UNPAID SUBSCRIPTIONS. A receiver cannot be appointed to collect unpaid stock subscriptions where the corporation is solvent and it has sufficient other assets to pay its debts.

CORPORATIONS—STOCK SUBSCRIPTIONS—POWER TO COLLECT—RIGHTS OF STOCKHOLDERS. Rem. & Bal. Code, § 3694, providing that the stockholders may prescribe the times and manner of payment of stock subscriptions, and giving the trustees power to demand and call in subscriptions, does not confer autocratic powers; and the directors failing to exercise good faith, the stockholders may make and enforce a call in the name and for the benefit of the corporation.

CORPORATIONS—RECEIVERS—APPOINTMENT — GROUNDS—INSPECTION OF BOOKS. A minority stockholder having the right to inspect and examine the books, it is not necessary to appoint a receiver to expert the books of a corporation and compel an accounting with one of its debtors.

CORPORATIONS — SUITS ON BEHALF OF CORPORATIONS — ACTION BY STOCKHOLDERS. Where the officers of a corporation refuse to bring suit to collect a debt due and owing to the corporation, the stockholders may maintain the action without resort to a receivership.

[1]Reported in 131 Pac. 485.

CORPORATIONS—RECEIVERS—GROUNDS—FRAUD. A receivership is not necessary to prevent the trustees of a corporation from selling its property in fraud of the rights of stockholders, since there is an adequate remedy by injunction.

CORPORATIONS — SALE OF PROPERTY — RIGHTS OF STOCKHOLDERS — FRAUD. A sale of the property of a corporation to a competing corporation having some common stockholders is not necessarily a fraud.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered August 17, 1912, appointing a receiver of a corporation. Reversed.

*Twitchell & Wentworth*, for appellant.

*L. J. Birdseye*, for respondents.

CHADWICK, J.—The Bergman Clay Manufacturing Company, a corporation, was organized in the year 1905. The capital stock was fixed at $25,000. The subscribers, the amount subscribed, and the amount unpaid on subscriptions are as follows:

| | | |
|---|---|---|
| M. L. Bergman, | $6,500, | $258 (tendered on the trial.) |
| C. A. Johnson, | 2,335, | |
| J. H. Evans, | 6,500, | 4,250 |
| J. H. Hurd, | 6,000, | 3,750 |
| J. T. Davie, | 2,000, | 1,000 |
| Peter Erickson, | 1,665, | 665 |

Stock was issued to each stockholder to the extent of the payment. M. L. Bergman was elected president, and so continued until 1911. The company borrowed money upon its organization and has since been indebted to the bank. Another corporation, the Idaho Lime Company, in which J. H. Evans and J. H. Hurd are active factors, has been marketing the products of the Bergman company, and claims a debt against the Bergman company of about $6,000. The evidence is not entirely clear, but we take it that the indebtedness, including the claim of the Idaho Lime Company, was at the time of the trial about $10,000. The value of the

property of the Bergman company is admitted to be considerably in excess of this sum. Defendants say in their brief that the assets of the corporation amount to $30,000, and that the debts do not exceed $4,000. They do not admit the $6,000 alleged to be due the Idaho Lime Company. After M. L. Bergman was ousted as president, this action was begun by the corporation to restrain him from interfering with and interrupting plaintiff's business. Defendants Bergman answered setting up the facts we have here epitomized, and alleged further, that the Idaho Lime Company was indebted to the plaintiff in a sum in excess of $19,000; that Hurd and Evans, together with the other stockholders, were conspiring to sell the property of plaintiff at less than its value, to pay the sum owing the bank and the amount they alleged to be due the lime company and to render defendants' stock worthless. They asked that the delinquent suscribers be compelled to pay the amounts unpaid on their subscriptions; that a receiver be appointed to bring such suits as might be necessary to collect these subscriptions and the amount alleged to be due from the Idaho Lime Company, and for general relief. After a trial, the court appointed a receiver. Plaintiff has appealed.

A receivership in this case must be sustained, if at all, by reference to some one or more of the following propositions: That a receiver is necessary—

(1) To recover the unpaid stock subscriptions.

(2) To take charge of the property pending the litigation.

(3) To expert the books and to compel an accounting with the Idaho Lime Company and to bring action for the amount found to be due.

(4) To prevent the trustees from selling the property at less than its value and from winding up the affairs of the company.

(5) To prevent the elimination of the plaintiff as a competitor of the Idaho Lime Company.

The power to appoint a receiver is a delicate one, and

should always be exercised with caution. *Roberts v. Washington Nat. Bank*, 9 Wash. 12, 37 Pac. 26; *Wales v. Dennis*, 9 Wash. 308, 37 Pac. 450; *Brundage v. Home Sav. & Loan Ass'n*, 11 Wash. 277, 39 Pac. 666; *Sengfelder v. Hill*, 16 Wash. 355, 47 Pac. 757, 58 Am. St. 36; *Spokane v. Amsterdamsch Trustees Kantoor*, 18 Wash. 81, 50 Pac. 1008; *Ridpath v. Sans Poil & Columbia R. Ferry Transp. Co.*, 26 Wash. 427, 67 Pac. 229; High, Receivers (4th ed.), 289, 294. This is the first rule confronting a chancellor upon an application, and the second is that a receiver should not be appointed if there is any other adequate remedy. *Secord v. Wheeler Gold Min. Co.*, 53 Wash. 620, 102 Pac. 654; 34 Cyc. 21, 23.

It has never been the purpose of the law to subject matters of purely private right to the uncontrolled and arbitrary action of the courts. *Hutchinson v. American Palace-Car Co.*, 104 Fed. 182.

A court will not interfere merely to settle disputes between stockholders, or to substitute its judgment for that of the majority of the trustees. Men differ in their judgment, and the law is that a majority of the stockholders, or in the interim between stockholders' meetings, the trustees, shall manage and control the affairs of the corporation. Some controlling equity must intervene to warrant the interposition of the court. In the case of *Theis v. Spokane Falls Gas Light Co.*, 49 Wash. 477, 95 Pac. 1074, this court recognized and adopted the rule just stated. The court there quoted the text, 2 Cook on Corporations (5th ed.), § 684, a part of which is as follows:

"The discretion of the directors or a majority of the stockholders as to acts *intra vires* cannot be questioned by single stockholders unless fraud is involved. . . . A partner in a copartnership may prevent action which he disapproves, but corporations are formed very largely to avoid that very danger and disadvantage. The corporate directors, so long as they act within their powers, may use their own discretion as to what ought to be done. . . .

A court of equity cannot, however, restrain the corporation from proceeding with business and using its funds for that purpose, even though a minority of the stockholders show that sound business discretion and judgment would dictate a different policy."

See, also, *Elliott v. Puget Sound Wood Products Co.*, 52 Wash. 637, 101 Pac. 228.

Proceeding, therefore, with that caution which the law imposes, the inquiry must be, Have the respondents an adequate remedy at law or in equity for the wrongs enumerated in their cross-complaint? We will take up and discuss the several propositions above stated in their order.

(1) Is a receiver necessary to recover the unpaid stock subscriptions? We know of no rule, nor has any been brought to our notice, that would justify the appointment of a receiver to collect unpaid stock subscriptions where a corporation is solvent. The first object of all receiverships is to preserve the assets. High, Receivers (4th ed.), 344. Primarily the debts of a corporation are not to be paid out of the capital stock. If the assets of the corporation are sufficient, no one can complain if the debts are paid out of them. This is especially so in this case. The stock was issued in proportion to the amount paid in money by the several subscribers, and theoretically each stockholder is bound for the corporate debts in proportion to his holding. A majority of the stockholders can wind up the corporation if they so will. If in so doing one or more of the stockholders have suffered a wrong, an action for an accounting and for contribution will afford the aggrieved stockholder ample remedy. *Lee v. Steinhart Lum. Co.*, 66 Wash. 572, 119 Pac. 1117. A subscriber to the capital stock of a corporation is, in virtue of his promise, a debtor, and the same principle that sustains the right of a stockholder to bring an action for the benefit of the corporation will sustain the suit of a stockholder to compel the payment of unpaid subscriptions. In fact, the right of a receiver to sue for unpaid subscriptions has been put on the ground that in so

doing he is doing only that which the stockholder might have done. In *Lathrop v. Knapp*, 27 Wis. 214, 232, the right of a receiver to maintain an action for unpaid subscriptions was challenged. In meeting the objection of the defendant, Chief Justice Dixon said:

"The other subscribers might have maintained an action against him upon it [the subscription]; and as they might, so I think this receiver may."

The statute, Rem. & Bal. Code, § 3694, provides that the stockholders of a corporation may, in the by-laws of the company, prescribe the times, manner and amounts in which payments of the sums subscribed by them respectively shall be made.

"But in case the same shall not be so prescribed, the trustees shall have the power to demand and call in from the stockholders the sums by them subscribed, at such time and in such manner, payments or installments, as they may deem proper."

The statute does not confer autocratic powers. The power here conferred is one that must be reasonably exercised for the benefit of the corporation and its stockholders. The directors could not continue from 1905 to 1912 to borrow money and pay interest, making the same a charge against the corporation, to the prejudice of the respondents who had paid their subscriptions. When it became evident to the directors that the corporation was in need of funds to carry on its business, and after a reasonable time had elapsed, it became their duty to make the call upon the stockholders for their unpaid subscription, and if the call was not complied with, to enforce payment in the manner provided by law. In short, it was their duty to exercise good faith to all the stockholders. Having failed to do this for so long a period of time, the principles of equity will permit the respondents to make and enforce the call in the name of and for the benefit of the corporation.

(2) The second proposition, that a receiver should be ap-

pointed to take charge of the property pending the suit to recover the stock subscriptions, is covered by our discussion of the first proposition.

(3) That a receiver is necessary to expert the books and compel an accounting with the Idaho Lime Company. We think that the remedy of the respondents is ample. It was held in *State ex rel. Weinberg v. Pacific Brewing & Malting Co.*, 21 Wash. 451, 58 Pac. 584, 47 L. R. A. 208, after a thorough review of the authorities, that a minority stockholder has a right to inspect and examine the books and records of the corporation at all reasonable times. The court said:

"Corporations, owing to the ease with which they can be formed under the liberal provisions of the statute and, affording as they do a limited liability for investors, have become a favorite means for the combination of capital, and are now engaged in almost every variety and character of business. In fact, they have largely superseded partnerships. Not having behind them the personal responsibility and fortunes of the promoters, or that of those who may have invested in their capital stock, the interests of the public at large require, and especially that part of the public dealing with them, that the courts adopt the rule which will most largely conduce to honesty in their management. We believe that these interests will be better protected by holding that a stockholder of a corporation has the right, at reasonable times, to inspect and examine the books and records of such corporation, so long as his purpose is to inform himself as to the manner and fidelity with which the corporate affairs are being conducted and his examination is made in the interests of the corporation. Nor will it be presumed, when such request is made, that the purpose of the inspection is other than in the interest of the corporation; and, when it is charged to be otherwise, the burden should be on the officers refusing such request, or the corporation, to establish it. The argument that, under this rule, the managers of a rival concern may acquire stock in the corporation and use the privilege for the purpose of benefiting the rival concern, to the detriment of the corporation, is not more forceful than the other, that, under the restricted rule, a combination can be made

by persons holding the majority of the stock, by which the corporation is managed for their own interests, to the exclusion and detriment of the minority holders and injury to the public dealing with it."

See, also, *Frost v. Puget Sound Realty Associates*, 57 Wash. 629, 107 Pac. 1029.

If the respondents know of a debt due and owing from the Idaho Lime Company to the Bergman Clay Company, or it can be shown by competent evidence, and the officers of the corporation refuse to bring suit upon demand, it is within the power of the respondents to maintain an action without resort to a receivership. Such suits are common. *Baker v. Seattle-Tacoma Power Co.*, 61 Wash. 578, 112 Pac. 647, Ann. Cas. 1912 C. 859; *Wright v. Tacoma Gas & Elec: Light Co.*, 53 Wash. 262, 101 Pac. 865; *Williams v. Erie Mountain Consol. Min. Co.*, 47 Wash. 360, 91 Pac. 1091; *Elliott v. Puget Sound Wood Products Co.*, *supra*.

(4) A court of equity will enjoin the trustees from selling the property of a corporation if it be made to appear that a fraud is contemplated, or about to be perpetrated, on the stockholders.

"It is to be observed, at the ouset, that the general jurisdiction of equity over corporate bodies does not extend to the power of dissolving the corporation, or of winding up its affairs and sequestrating the corporate property and effects, in the absence of express statutory authority. And courts of equity will not, ordinarily, by virtue of their general equitable jurisdiction, or of their visitorial powers over corporate bodies, sequestrate the effects of the corporation, or take the management of its affairs from the hands of its own officers and intrust it to the control of a receiver of the court, upon the application either of creditors or shareholders. And while equity may properly compel officers of corporations to account for any breach of trust in their official capacity, yet in the absence of statutes extending its jurisdiction, it will usually decline to assume control over the management of the affairs of a corporation, upon a bill filed by a stockholder alleging fraud, mismanagement and collusion on the part of the corporate authorities, since such interference

would necessarily result in the dissolution of the corporation, and the court would thus accomplish indirectly what it has no power to do directly. The remedial power exercised by courts of equity, in such cases, ordinarily extends no further than the granting of an injunction against any special misconduct on the part of the corporate officers; and although the facts shown may be sufficient foundation for such an injunction, the court will not enlarge its jurisdiction by taking the affairs of the corporation out of the management of its own officers, and placing them in the hands of a receiver." High, Receivers (3d ed.), § 288.

"A court of equity will enjoin on behalf of the stockholders any improper alienation or disposition of the property for other than corporate purposes, and will restrain the commission of acts which are contrary to law and tend to the destruction of the franchises as well as the improper management of the business of the corporation, or a wrongful diversion of its funds. And in such cases equity may grant relief at the suit of a single stockholder." Waterman, Corporations, § 319.

See, also, *Dodge v. Woolsey*, 18 How. 331; 10 Cyc. 983-5.

(5) It is not entirely clear that the Idaho Lime Company is in fact a competitor of the plaintiff company; but assuming that it is so, it does not follow that, because Evans and Hurd are stockholders in the Bergman Clay Company and control the Idaho Lime Company, the sale of the property would be in fraud of the rights of the respondents. And here again equity will enjoin if a case be made out.

For six years M. L. Bergman was president of the corporation. He insists that he knew nothing of its business affairs. Of the meetings at which he is shown to have been present, his recollection is not distinct, his answer being as a rule "I do not remember." Nevertheless the law charges him with the knowledge he now disclaims. The business condition of the company has not materially changed since the beginning, and without being understood as holding that the respondents are to be denied any remedy which is in law or equity open to them, we must hold, upon the showing made, that respondents have waited too long to warrant the court

in taking the property out of the hands of the trustees and administering it through a receivership. We are not satisfied that the rights of all parties will be best served by such procedure. High, Receivers (3d ed.), § 295a.

"The tendency to appoint receivers at the instance of those who have, for the hope of greater gain, put their money to speculative uses should be checked rather than encouraged." *Frost v. Puget Sound Realty Associates, supra.*

Both sides rely upon the case of *Secord v. Wheeler Gold Min. Co., supra.* We think that decision clearly sustains our view that this is not a proper case for a receiver. We have said no more in this case than is contained in the one sentence in that opinion:

"Courts will not interfere except in case of fraud or the infringement of legal acts which cannot be otherwise redressed."

It is not enough that there is a wrong. It must be made to appear also that there is no adequate remedy. The cases of *Theis v. Spokane Falls Gas Light Co., supra,* and *Boothe v. Summit Coal Min. Co.,* 55 Wash. 167, 104 Pac. 207, are also relied on. The question of a receivership was not involved in the *Theis* case, while the *Boothe* case is, as is said therein, *"sui generis."* The case was resolved by reference to the law of partnership. *Whipple v. Lee,* 46 Wash. 266, 89 Pac. 712. Because the parties were equal in right and because there was "no control of the corporation by a board of trustees, sustained by a majority of the stock," and because, the equities of the case did "violence to the elementary idea that a corporation is to be controlled by a governing board representing a majority of the stock." We find nothing in these cases or in others cited by respondents to warrant us in excepting this case from the general rules.

The case will be reversed, with instructions to discharge the receiver.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.