[Civ. No. 9808. First Appellate District, Division Two.—July 22, 1935.]

MARY CUNHA, Plaintiff and Appellant, v. MANUEL ENOS CUNHA, Defendant and Appellant.

414

Carl W. Anderson and John D. Willard for Plaintiff and Appellant.

Norman S. Menifee for Defendant and Appellant.

STURTEVANT, J.—From an interlocutory decree in a divorce proceeding both parties have appealed. The action was commenced by the wife. She filed a complaint alleging extreme cruelty. The husband answered and denied many of the allegations contained in the complaint and at the same time filed a cross-complaint. The plaintiff filed an answer to the cross-complaint and on the issues so made the action went to trial. In the pleadings of both parties the property rights were put in issue.

In ascertaining the property rights it transpired that the mother of the defendant claimed that the parties were

indebted to her for $1500 loaned to them. The defendant admitted that he had received the loan and he introduced in evidence a promissory note as evidence thereof. It was the theory of the defendant that the loan was made in 1924. He claimed that thereafter on September 1, 1927, a note was executed by him evidencing the loan. Further, he claimed that such note was renewed by another note dated January 2, 1932, and over the objection and exception of the plaintiff both notes were received in evidence showing the history of the transaction. The plaintiff makes two separate and different attacks. She claims that both notes were written on the same typewriter at one and the same time· and that the evidence was simulated. That objection was addressed to the trial court, but from the findings as made by the court we must assume it found the documents to be genuine and what they purported to be. The defendant and his mother both testified to the fact that the loan was made and that it had not been repaid. The most that can be said in behalf of the plaintiff's contention is that there was some conflict in the evidence, but of course that conflict was for the trier of the facts to determine. ■ Again, it is asserted by the plaintiff that the loan, if made, had become barred by the statute of limitations. Conceding that the loan was barred by the statute of limitations when the last note was made, that fact did not operate to pay the debt. It rested with the husband to assert the defense against his mother or to waive the defense. The plaintiff cites us to no authority and we know of none which would authorize her to force her husband to take refuge behind a plea of the statute of limitations.

■ It is next contended that the trial court did not make a division of the community property in accordance with the provisions of sections 146–148 of the Civil Code. In support of that contention the plaintiff claims she should have received more than one-half. As to what the division should have been rested with the trial court and there is certainly nothing in the record showing that the trial court abused its discretion. In this same connection the plaintiff complains because the trial court did not make a provision allowing her maintenance in addition to awarding her one-half of the community property. However, she cites us to no part of the record that would show the trial court erred in not doing so.

■ After the interlocutory decree was entered the plaintiff made a motion for a new trial. The motion was denied. Thereafter on December 29, 1933, she filed in the divorce proceeding a purported bill of review in which she claimed the interlocutory decree had been obtained by fraud. The trial court declined to consider the document on the ground that it had no jurisdiction. The ruling was clearly correct. The statute gives no authority for the practice which the plaintiff attempted to follow.

■ The defendant claims that the evidence was not sufficient to support the findings that the plaintiff was entitled to a divorce on any ground. From expressions by the trial court during the trial it is quite clear that that court was much inclined to entertain the opinion expressed by the defendant. However, it is also clear the trial court was clearly of the opinion that the parties could not be reconciled. Furthermore, there was some evidence showing, or tending to show, that the defendant had been guilty of acts of extreme cruelty. Under these circumstances we are not inclined to sustain the contention of the defendant.

■ After the trial had been had, the trial court made an order allowing the plaintiff $150 for attorney fees and costs on appeal. The defendant earnestly objects to the order, claiming that as the trial court had awarded her one-half of the community property she should have paid her costs and counsel fees out of that share and the trial court therefore should not have allowed her an additional sum. The showing is incomplete. There was no evidence that the plaintiff was possessed of any separate property, nor that at the time the order was made, nor at this time, she has obtained possession of the moneys and properties awarded to her under the decree. There was therefore no error in the ruling.

■ The most serious questions are not discussed in the briefs, but require a reversal. In the plaintiff's complaint, alleging the assets of the parties, the plaintiff alleged that the community property consisted, among other things, of "seed peas". The defendant denied the allegation. On the trial some evidence was introduced, but not enough to show the facts. The parties owned a seventeen-acre farm at Half Moon Bay on the coast of San Mateo County. They were engaged in raising seed peas. The complaint was filed Janu-

ary 20, 1933. At that time the plants would be very small. The case came on for trial on April 21, 1933. At that time the plants were not ready to be harvested and would not be for some time thereafter. However, there is evidence that the crop was a fairly good one and had a potential value of $1900, more or less. Instead of introducing evidence estimating the crop, estimating the cost of harvest, etc., and thus ascertaining the value of the growing crop, counsel entered into a stipulation that the returns from the commission house should be accounted for. Some returns were accounted for, however there was no evidence that they were all accounted for. Furthermore, no finding was made either as to the quantity or the value of the crop of seed peas. The record contains enough to indicate that there has been a miscarriage of justice regarding that particular element.

The record discloses clearly that at the time of the marriage the defendant was possessed of separate property in the sum of $2,000 or thereabouts. After the parties married they were very frugal and worked very hard. At the time of the hearing they were possessed of an undivided one-fourth interest in a ranch in San Joaquin County, which interest was of the value of $1375. They also owned the Half Moon Bay property valued at $1700. There was cash on hand and accounts receivable, $486.11. There were liabilities, including $1,000 owing to the plaintiff's father and $1500 owing to the defendant's mother. There was owing to Gill Brothers, $327.60. It is needless to say that none of the creditors were parties to the action. Nevertheless the court awarded to the plaintiff the one-fourth interest to the San Joaquin ranch and it awarded to the defendant the San Mateo County ranch. Continuing, it imposed a lien as follows: "It is further ordered, adjudged and decreed and this court does hereby further order, adjudge and decree that the real property hereinabove mentioned (both ranches) and awarded respectively to the parties hereto, is, and all of it is, subject to a lien in the sum of $2,827.60 for the payment of the community indebtedness of the parties hereto and that said community indebtedness in the sum of $2,827.60 is payable in equal proportions by the said parties hereto." It will be conceded at once that said purported lien was not binding on anybody excepting the parties to the litigation. As to them it was incomplete. The next day after the judgment was entered all of the credi-

tors were at liberty to sue and attach the plaintiff or the defendant or both of them. Both parties concede that the action was in equity. (*Gaston* v. *Gaston,* 114 Cal. 542 [46 Pac. 609, 55 Am. St. Rep. 86].) Furthermore, it will be conceded that equity will not adjudicate causes by piecemeal. Neither party has cited to us an authority that is in point on the question. We think that by analogy *Rassaert* v. *Mensch,* 17 Cal. App. 637 [120 Pac. 1072], is helpful. In that case an accounting was held between those who had been partners. On page 641, speaking of the form of the decree, the court said: "The creditors are not bound by the decree in this action. The judgment would leave the partnership business unsettled and the liabilities unpaid. Before there can be a decree finally settling the partnership accounts the liabilities must be paid or adjusted to the satisfaction of the creditors. No dissolution of any kind affects the rights of third parties, who have had dealings with the partnership, without their consent. (Parsons on Partnership, secs. 296, 297.) When equity undertakes to adjust the differences between partners, it adjusts them all; the account and decree must include all these matters, and leave nothing open for future litigation or controversy." Although, as stated above, there was no conflict in the evidence regarding the possession by the defendant of assets aggregating approximately $2,000 at the time he was married, the court made no express finding thereon. It follows that the purported lien was in excess of jurisdiction as to the creditors who were not parties to the action. It also follows that certain issues regarding property rights presented to the trial court for hearing and determination were not disposed of.

The judgment is reversed and the plaintiff will have judgment for her costs.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 21, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 19, 1935.