GRISMER et al. v. MERGER MINES
CORPORATION et al.

No. 230.

District Court, E. D. Washington, N. D.

March 21, 1942.

Graves, Kizer & Graves, of Spokane, Wash., and H. J. Hull, of Wallace, Idaho, for plaintiffs.

Jas. A. Wayne, of Wallace, Idaho, and Hamblen, Gilbert & Brooke, of Spokane, Wash., for defendants.

SCHWELLENBACH, District Judge.

This is a stockholders' bill in equity to compel the defendant corporation (called Merger hereafter) and its President, the defendant Pearson, to perform a contract between them in a manner equitable to all the stockholders. In order to confine this opinion to reasonable bounds, I am filing simultaneously herewith a detailed opinion as to the facts.

Merger is an Arizona mining development concern which is completely dominated by the defendant Pearson. Its principal place of business, where all its books and records are kept, is in Spokane, Washington. The properties it is developing are in Idaho. It has an authorized capital of 3,900,000 shares of common stock of which approximately 2,963,000, from time to time, have been issued. In 1936, Merger owed money to various persons. It was obligated to deliver stock to numerous persons entitled thereto under the agreement signed at the time of the company's organization. It had no funds and practically no unissued authorized stock. To save the company, the defendants Pearson agreed that they would loan Merger their own stock to meet its needs. This loan was to be repaid with stock as soon as available out of the new issue of 1,000,000 shares to be authorized by an increase in Merger's capital stock. This agreement was evidenced in writing by the corporation minutes and entries in its books of account, all entered under Pearson's direction and control. Acting thereunder during 1936, the defendants Pearson transferred 772,541 shares to the corporate treasury. That stock was community property of the Pearsons. Thence, it was reissued to sundry persons in accordance with the understanding. In September, 1936, the additional 1,000,000 shares were authorized. Merger has not repaid Pearson his loaned stock except as to

63,000 shares which he took on his own responsibility and sold for his own benefit against the advice of his accountant and over the objection of two of his codirectors.

Meanwhile, development work of the company and the payment of its expenses, including Pearson's salary, have been financed by 15 assessments levied against the outstanding shares. Just how much has thus been realized the record does not disclose, but, if the Pearsons had kept their stock and paid the assessments levied against it, such assessments would have amounted to $61,223.82. Of this amount, the Pearsons paid only $1,303.30.

Defendants excuse the failure to carry out the contract by claiming that the new stock could not be delivered to Pearson until each other stockholder had been offered his preemptive right of participation in the issue. Assuming that to be correct, the excuse fails because the defendants let five years go by without making the offer. The other excuse is that the stock could not be delivered to Pearson without registration with the Securities and Exchange Commission. Clearly defendants could not register with S.E.C. without blasting any future hopes of raising funds by the assessment device. This because the company does not own any of the mining claims which it has carried on all of its balance sheets which the directors permitted to be distributed among stockholders as of a value in excess of $1,600,000. All it has is a possessory right under color of title which will require adverse possession actions to perfect. Non-registration, however, did not deter Pearson from selling 63,000 of the new shares on his own account when he needed the money. The testimony did not disclose the amount received by Pearson for this stock. He did, however, testify that the market price for which the Merger stock sold between 1936 and 1942 ranged from 1¢ to 11¢ per share. So, non-registration must be characterized as an explanation rather than an excuse for the failure to perform the contract.

The fact of the stock loan and the failure to repay it was concealed from plaintiffs and other stockholders by refusal to permit them to inspect those corporation records which would have revealed the situation. Merger's directors persisted in this refusal from 1938 through 1940. Only after a hotly contested trip to the State Supreme Court was inspection forced through the use of a writ of mandate. See: State ex rel. Grismer et al. v. Merger Mines Corporation et al., 3 Wash.2d 417, 101 P.2d 308.

The value to the stockholders of the properties which Merger is developing rests upon two contingencies: (1) Perfection of title to the mining claims in Merger and (2) discovery of ore in commercial quantities. The properties are in the silver belt in Idaho adjacent to silver-bearing ore of immense value. The vice of the situation lies in the fact that, under present arrangements, Pearson can stand by without expense to himself and force the other stockholders to finance the development work. He can take his stock or leave it depending on its value. The other stockholders carry the burden while he is waiting to cash in on the results. I recognize that Pearson saved the Company in 1936. Consequently, I am anxious not to penalize him. On the other hand, what he did cost him nothing and he profited thereby along with the other stockholders. He was more interested in saving the company then than any one of the others. The stock which he loaned was worthless unless the company was saved. The failure to fully perform the 1936 contract gives Pearson an unconscionable advantage. Equity cannot permit a corporation director to use the power of his office to attain such an end.

Defendants urge the court to decline to exercise its jurisdiction because plaintiffs ask the court to interfere with the management of the internal affairs of a foreign corporation. That plaintiffs do so ask is clear. Tolbert v. Modern Woodmen of America, 83 Wash. 287, 145 P. 183. However, the reach of the Tolbert decision is limited to the application of the rule when the principal place of business of a foreign corporation is located in the state of its domicil. The Washington court has not announced its attitude on the court's duty when the place of business of the foreign corporation is within the territorial limits over which the court has jurisdiction. I say this despite the fact that the Washington Supreme Court did interfere with the internal affairs of this very corporation when it affirmed the writ of mandate in State ex rel. Grismer v. Merger Mines Corporation, supra. This because there the issue was not raised and the question not discussed. Therefore, I

am free to search for the answer in the field of general law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487; MacGregor, Executor, v. State Mutual Life Assurance Co., 62 S.Ct. 607, 86 L.Ed. ——, decided Feb. 16, 1942. Whether the court should exercise this jurisdiction lies within its discretion. Williamson v. Missouri-Kansas Pipe Line Co., 7 Cir., 56 F.2d 503; Rogers v. Guaranty Trust Company, 288 U.S. 123, 53 S.Ct. 295, 303, 77 L.Ed. 652, 89 A.L.R. 720. In the latter case, the standards fixed by the Supreme Court were the "considerations of convenience, efficiency and justice." Thus judged, there is no doubt what the court should do here. To compel these plaintiffs to prosecute this case in Arizona would be inconvenient because of the distance involved, inefficient because of the expense involved, and unjust because probably it would deprive them of any relief.

The rule on which defendants rely is bottomed on the desire to protect against unreasonable harassment those corporations whose business requirements involve activities outside of the states of their domicil. When corporations seeking the advantages of friendly statutes establish their domicils hundreds of miles away from their places of abode, all reason for the rule evaporates. To apply the rule under such circumstances would not only result in injustice but would demonstrate a complete lack of awareness of the realities of the situation.

A few days before the trial and thirty days after the pre-trial hearing, defendants moved to amend their answer by pleading the statute of limitations. This motion was granted subject to the right of the plaintiffs to reply. At the trial, plaintiffs proved without objection the facts concerning the concealment of the status of the stock-loan arrangement by the defendants. During the presentation of plaintiffs' case, plaintiffs' counsel, in response to inquiry by defendants' counsel, stated that such was the purpose of the testimony. Defendants now contend that the statute bars prosecution of this action.

■■■ In so far as plaintiffs seek enforcement of the contract for the return of the stock, this is "an action upon a contract in writing, * * *." Rem.Rev.Stat. of Wash. Sec. 157, subd. 2. The contract consists of the corporate minutes and entries made under Pearson's direction and control. Voorhees v. Nabob Silver-Lead Co.,

174 Wash. 5, 24 P.2d 114. Under the statute, the action is not barred for six years after the making of the contract. The question as to which statute applies on Pearson's liability to pay the assessments upon the stock before he can receive it is more difficult. The same statute, Rem. Rev.Stat.Wash. 157, subd. 2, provides that the bar of the statute shall not become effective for six years when the claim for recovery is based on a "liability express or implied arising out of a written agreement." The Washington Supreme Court in Caldwell v. Hurley, 41 Wash. 296, 83 P. 318, 320, in holding that the six-year statute applied against the co-surety on a bond, said: "The peculiar feature of our statute is that an implied liability arising out of a written instrument is included in the same clause with an express liability arising out of a written contract. The Legislature evidently thereby intended that a certain class of actions should be included within the terms of said section which had not in other states been associated or connected with actions on written instruments or actions founded upon written agreements." This ruling was affirmed in Lindblom v. Johnston, 92 Wash. 171, 158 P. 972, and extended in Oregon-Washington Railroad & Navigation Co. v. Seattle Grain Company, 106 Wash. 1, 178 P. 648, 185 P. 583. There it was necessary to combine a statute with the contract upon which the action was based. In this case, we have a combination of Pearson's obligation under the contract plus his obligation which arose from his position as director of the corporation. See Baker v. Seattle-Tacoma Power Company, 61 Wash. 578, 112 P. 647, Ann.Cas.1912C, 859. It could logically be concluded that Pearson's liability to pay the assessments would be covered by what the Washington Supreme Court called "the peculiar feature of our statute." Such a ruling, however, is not necessary here. Assuming that recovery on this phase is based upon the breach of duty by Pearson, which would be covered by the three years statute, Rem. Rev.Stat.Wash. § 159, subd. 4, the defendants are prevented from securing the protection of that statute because they concealed the facts which originated the action. Restatement of the Law, Agency, Sec. 427(g). The concealment of the facts necessary for an understandable commencement of this action created an equitable estoppel which will defeat defendants'

plea of the statute of limitations. Marshall-Wells Hardware Company v. Title Guaranty and Surety Company, 89 Wash. 404, 154 P. 801; Kreielsheimer v. Gill, 85 Wash. 175, 147 P. 871; Bain v. Wallace, 167 Wash. 583, 10 P.2d 226. It is true that in Reeves v. John Davis & Co., 164 Wash. 287, 2 P.2d 732, it was held that such estoppel must be pleaded and proved. However, under the Federal Rules of Civil Procedure, Rule 7(a), 28 U.S.C.A. following section 723c, a reply is no longer necessary. Furthermore, those rules provide: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." Federal Rules of Civil Procedure, Rule 15(b). Under the particular circumstances of this case, I would feel constrained now to grant a motion to file a reply to defendant's amended answer if plaintiffs' counsel should deem it desirable. I do not think it necessary.

■10] Defendants next contend that the court should not undertake to substitute its judgment for that of the board of directors in solving this problem. In this, defendants rely on McQuillen v. National Cash Register Co., 4 Cir., 112 F.2d 877, 884. There the court held that the directors acted in good faith without negligence or indifference. In that opinion, the court said: "Courts cannot here condone on the part of those in control of a corporation either actual bad faith or a total neglect or even utter indifference to the rights of stockholders." There is no similarity between the facts of the National Cash Register case and this. Here the directors have exhibited an attitude of utter indifference and total neglect in so far as this transaction is concerned. For almost six years they have failed to take any step that would force compliance with the agreement which was to be carried out "as soon as the new issue of stock is available." They permitted Pearson to dominate and control the company. They permitted· representations to be made to the stockholders as to the title to property to which they knew or should have known

that Merger had no title. They refused plaintiffs access to Merger books. I see nothing which would justify me in permitting them longer to perpetuate the unfair and unjust advantage which Pearson has over the other stockholders. The rule on which defendants rely requires the court to proceed with caution but does not prevent the court from proceeding where the facts justify it. Bergman Clay Manufacturing Company v. Bergman, 73 Wash. 144, 131 P. 485.

■ That this is a case for equitable cognizance is certain. The failure to levy and collect the assessments ratably among all the stockholders violates a fundamental of corporation law. Seyberth v. American Commander Mining & Milling Co., 42 Idaho 254, 245 P. 392; Coeur D' Alenes Lead Co. v. Kingsbury, 59 Idaho 627, 85 P.2d 691; Vol. 2 Fletcher Cyc.Corp. Sec. 677; Vol. 1 Morawetz Private Corp., 2d Ed., Sec. 154. . A corporation director will not be permitted to gain personal advantage at the expense of the stockholders. Parsons v. Tacoma Smelting and Refining Company, 25 Wash. 492, 65 P. 765; Baker v. Seattle-Tacoma Power Company, supra; Wonderful Group Mining Co. v. Rand, 111 Wash. 557, 191 P. 631; Sacajawea Lumber & Shingle Co. v. Skookum Lumber Co., 116 Wash. 75, 198 P. 1112. Plaintiffs may bring this action to compel the payment of the assessments. Bergman Clay Manufacturing Company v. Bergman, supra; Bergman v. Evans, 92 Wash. 158, 158 P. 961, Ann.Cas.1918C, 848. See, also, Rummens v. Guaranty Trust Company, 199 Wash. 337, 347, 92 P.2d 228. The court has the power to force the defendants to carry out the contract under terms which, in the opinion of the court, are equitable. Rummens v. Guaranty Trust Company, supra. The novelty of the problem will not prevent the court from acting and the court may suit proceedings and remedies to circumstances of cases so as to enforce substantial rights of all parties before them. Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192. The court may retain jurisdiction of the case for the purpose of administering complete relief and doing entire justice with respect to the subject matter. Income Properties Investment Corporation v. Trefethen, 155 Wash. 493, 284 P. 782; Lefevre v. Washington Monument and Cut Stone Company, 195 Wash. 537,

81 P.2d 819. The court will dispose of the whole controversy and not decide it piecemeal. Cunha v. Cunha, 8 Cal.App.2d 413, 48 P.2d 130; Roadway Express v. Murray, D.C., 60 F.2d 293.

The problem here · is to work out a formula by which Pearson's unfair advantage over other stockholders will be eliminated and the wrong which he has visited upon his stockholders remedied. The task is pregnant with difficulties. I do not wish unduly to penalize Pearson and I seek to avoid harming the corporation itself. After study, I have determined that the judgment and decree to be entered should provide:

1. Merger shall have judgment against the Pearsons in an amount equal to the amount to which the 63,000 shares of Merger stock would have been liable for the assessments levied by Merger had such stock been outstanding in Pearson's hands between October 1, 1936, and the dates on which such stock was sold by Pearson, with interest thereon at six per cent (6%) per annum from the date that each assessment would have become payable.

2. Defendant corporation and its officers, directors, employees and agents will be enjoined permanently from settling or compromising that judgment for anything less than its amount or for its payment in anything other than cash.

3. Unless judgment provided in item one hereof shall have been paid in full in cash on or before one year after the entry of the judgment and decree in this case, the defendants Pearson and any claiming by, through or under them will be enjoined permanently from receiving any of the remainder of the stock loaned by them to Merger and Merger will be enjoined permanently from issuing any of its stock for the purpose of repaying the stock loan to the Pearsons or to any person, firm or corporation claiming by, through or under them.

4. If, on or before one year after the date of the entry of the judgment herein, the Pearsons pay the judgment provided in item one in full in cash to Merger, then, at any time during five (5) years thereafter, they shall be entitled to receive out of the new issue, on demand from Merger without registration with any governmental regulatory body and without the offering thereof to any other stockholder or stockholders, 354,771 shares of the stock of Merger provided that, before the stock is issued to the Pearsons, they shall have paid to Merger in cash an amount equal to the amount of assessments that would have been levied against such shares had they been held by them from October 1, 1936, to the ,date of the judgment, less $1,303.30, with interest thereon from the date of each assessment to the date of payment at the rate of six per cent (6%) per annum, and provided, further, that the Pearsons shall have paid on the 354,771 shares an amount equal to the amount to which such shares would become liable for assessments hereafter levied if they had held such stock when the assessments were levied. These latter sums to be paid, from time to time, on the dates on which future assessments upon Merger stock shall become due and payable.

5. If the Pearsons reclaim the stock as provided in item four, the remaining 354,-770 shares shall immediately be offered ratably to the other stockholders of record on the date that the Pearsons reclaim their stock. This offer shall be made by mailing to each of such stockholders, at the address shown upon Merger's stock register, notice of his right to purchase his proportionate share of such stock at any time within ninety (90) days after the date of mailing by paying therefor the sum of eleven cents (11¢) per share plus an amount equal to the amount which would have been levied for assessments against such shares had they been outstanding between October 1, 1936, and the date of the offer, with interest at six per cent (6%) per annum from the date of the levying of the assessments until paid. It will not be necessary to register this offer with any governmental regulatory body, and each stockholder shall have the privilege of purchasing all or any part of the stock so offered to him.

6. To the extent that the stockholders have failed to accept the offer provided in item five, the defendants Pearson shall have the right, within thirty (30) days after the expiration of the ninety (90) day period for the acceptance by the stockholders has expired, to purchase the stock on the same terms and conditions that it was purchaseable by the other stockholders except that they shall not be required to pay the eleven cents (11¢) per share.

7. The corporation will pay to the Pearsons such money as it shall receive from

the stockholders under item five to the extent of eleven cents (11¢) per share.

8. The defendant corporation, its officers, directors, agents and employees shall be enjoined permanently from making any other disposition or settlement concerning the loaned-stock transaction than is provided in the decree including the right to circumvent the decree herein by a reorganization or transfer of Merger's mining claims.

9. The decree will provide that the court will retain jurisdiction over the parties and subject matter of this action in order that the provisions of the decree may be enforced or to modify the decree so as to protect or implement the rights of the stockholders thereof.

10. During the time that the right to receive the 772,541 shares shall exist either in the Pearsons or the other stockholders of Merger, the corporation and its officers and agents will reserve from issuance out of the new stock authorized September 12, 1936, the 772,541 shares necessary to comply with the provisions of the decree and Merger and its officers will be enjoined from issuing such stock for any other purpose.

11. In the event of an appeal from the decree herein, the time within which the Pearsons may pay the judgment as provided in item one and may reclaim their stock as provided in item four will be extended so as to have such times commence on the date of the final disposition of this case by the Appellate Court.

■ Plaintiffs ask for the allowance of attorneys' fees for their counsel. Such an allowance is proper. Drain v. Wilson, 117 Wash. 34, 200 P. 581; Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Greenough v. Coeur D'Alenes Lead Co., 52 Idaho 599, 18 P.2d 288; Coeur D' Alenes Lead Company v. Kingsbury, 59 Idaho 627, 85 P.2d 691. Counsel stipulated that the court might fix the attorneys' fees without testimony as to their value. I appreciate that counsel's work has been difficult and protracted. It has included not only this case but also the mandamus action in the state courts which was a necessary preliminary hereto. On the other hand, cash for the payment of attorneys' fees is scarce. I will make an allowance of five hundred dollars ($500) in the judgment against the defendant corporation. The judgment will also provide for the

payment to the plaintiffs' counsel of twenty-five per cent (25%) of any money collected by the company from the defendants Pearson under the judgment provided for in item one, plus twelve and one-half per cent (12½%) of any money which the corporation may receive in payment of assessments on the stock as provided in items four, five and six.