# THE CITY OF CHICAGO *et al.*

## *v.*

# DWIGHT F. CAMERON *et al.*

*Filed at Ottawa May 12, 1887.*

1. TRUST—*wrongful application of securities by officers of a corporation—purchaser with notice.* The appropriation of the bonds of a railway company, by its president and general manager, to the payment of the debts of other corporations, from which the railway company derives no practical benefit, is a breach of trust, and illegal and void as to the railway company; and such bonds will be void in the hands of all persons acquiring them with notice of the facts showing the illegality of their delivery for unauthorized purposes.

2. CORPORATIONS — *stockholders—preserving the corporate property and interests—rights and remedies of the stockholders.* Where a corporation having a right of action against directors, officers or others, for wrongfully dealing with corporate property, or wrongfully exercising corporate franchises, either actually or virtually refuses to institute or prosecute a suit, in order to prevent a failure of justice an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers and other persons; but it is absolutely necessary that the corporation shall be joined as a party, usually defendant.

3. Where there is a reasonable certainty that a demand on the corporation to bring suit will be nugatory, the stockholder, as one of the beneficial parties in interest, may bring the suit without first having requested the managing body of the corporation to do so.

4. The remedy of stockholders against the wrongful acts of the directors or other officers of a corporation is not confined to the prevention of an unlawful act, but in a case where an act would be enjoined, a court of equity may declare the same act, if consummated, void. So if corporate bonds are delivered for improper purposes, by an officer having charge of them, a court of equity may declare them void, and cancel them, and set aside a deed of trust given to secure their payment.

5. RES JUDICATA—*difference in effect of judgment as a bar and as an estoppel.* There is a difference in the effect of a judgment as a bar, and as an estoppel in a suit upon a different cause of action. A judgment upon the merits constitutes an absolute bar to a second suit upon the same cause of action. But when the second suit is upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, and only upon that is the judgment conclusive in another action.

6. Laches—*delay on the part of stockholders to interpose to protect corporate interests.* Where no attempt was made to enforce the payment of bonds of a railway company wrongfully delivered for other than a corporate purpose, it was *held*, that a delay of eleven and a half years in the bringing of a suit by stockholders to cancel and set aside such bonds, and the deed of trust given to secure their payment, was not a bar to the relief sought.

7. Assignment of error—*by whom.* Parties holding railroad bonds wrongfully issued or delivered to them, can not be heard to urge as error that the rights of others not before the court have been determined. The fact that the decree may be erroneous as to others not legally brought before the court, can be urged only by them. A party can avail himself only of error which may injuriously affect himself.

Appeal from the Appellate Court for the Second District;— heard in that court on writ of error to the Circuit Court of La Salle county; the Hon. Charles Blanchard, Judge, presiding.

Mr. George W. Smith, for the appellant the city of Chicago:

The railroad company had ample authority to issue the bonds, and there was a sufficient consideration. They were delivered in satisfaction of certain debts of other companies, which may have been for the benefit of the railroad company.

The finding that the bonds were not used in the construction, equipment or operation of the railroad, does not establish a want of consideration. *Railroad Co.* v. *Thompson*, 103 Ill. 187.

Failure of consideration should have been pleaded by the corporation. It was a proper defence in an action at law.

The circuit court of Cook county, in a cause to which the railroad company was a party, had determined the bonds to be valid and lawfully outstanding. This was sufficient to oust the jurisdiction. *Whitney* v. *Stevens*, 97 Ill. 482; *Mail* v. *Maxwell*, 107 id. 555; *Land Co.* v. *Peck*, 112 id. 408.

The complainants were not entitled to bring the suit. It is not a bill to restrain the issue of bonds, nor to compel officers or directors to reimburse the railroad company, but is a bill directed against bondholders, which the corporation did not

approve, but to which it submitted. It sought to wrest from them their property. It was without precedent, and destitute of principle. Morawetz on Corp. sec. 383, *et seq.;* 3 Pomeroy's Eq. Jur. sec. 1088, *et seq.; Gray* v. *Lewis,* L. R. 8 Ch. App. 1035; *Russell* v. *Wakefield,* L. R. 20 Eq. 479; *Hawes* v. *Oakland,* 104 U. S. 450; *Detroit* v. *Deane,* 106 id. 537; *Brewer* v. *Boston Theater,* 104 Mass. 378.

Complainants did not apply to the directors to file a bill, nor did they call a meeting of stockholders; and no damage is shown to complainants.

The decree is invalid, and not binding on non-resident owners of bonds.

Mr. J. L. HIGH, Mr. E. F. BULL, and Mr. D. S. WEGG, for the appellees:

Equity has jurisdiction, at the suit of a single stockholder, to prevent the misapplication of the funds or credit of a corporation by its officers or agents, and to afford relief if such fraudulent misappropriation has already been consummated. 3 Pomeroy's Eq. 10; Wood's Railway Law, sec. 63; *Robinson* v. *Smith,* 3 Paige, 222; *Coleman* v. *Railroad Co.* 10 Beav. 1; *Dodge* v. *Woolsey,* 18 How. 341; *Solomons* v. *Laing,* 12 Beav. 377; *Bliss* v. *Anderson,* 31 Ala. 613.

The court has jurisdiction to release the trust deed as a cloud upon the title of the railroad company. Rev. Stat. chap. 22, sec. 50.

If complete remedy could have been had at law, the objection is waived by pleading to the merits. *Darby* v. *Dixon,* 4 Bradw. 187; *Seminary* v. *Gage,* 103 Ill. 175.

Appellees are not entitled to the presumption of *bona ·fide* ownership of the bonds, as the court finds that the bonds were illegally and fraudulently delivered, in the first instance, without consideration, and in payment of debts of other corporations, and that the holders of such bonds took them with full knowledge of these facts. *Smith* v. *Sac County,* 11 Wall. 139.

The case of *Chicago and Great Western Railroad Land Co.* v. *Peck*, 112 Ill. 408, is not *res judicata* upon the issues presented in this action.   To entitle the former judgment to be pleaded as *res judicata* in bar of a subsequent action, there must be an absolute identity of the subject matter, of the parties, of the cause of action, and of the purpose or object sought.   The subject matter of the prior action was the indebtedness of the improvement company, the water and gas company and the land company; the cause of action was the deed of trust executed by the land company to Jewett; the purpose or object of the action was the enforcement of that deed of trust by a decree of foreclosure.   Neither the subject matter, the cause of action, nor the purpose sought in that litigation, was identical with the subject matter, the cause of action, or the purpose sought in the case at bar. Freeman on Judgments, sec. 252; Bigelow on Estoppel, 22; *Aspden* v. *Nixon*, 4 How. 467; *Miller* v. *McManus*, 57 Ill. 128; *Hanna* v. *Reid*, 102 id. 596; *Packet Co.* v. *Sickles*, 24 How. 333; 5 Wall. 580; *Cleaton* v. *Chambliss*, 6 Rand. 86.

The right of action of a stockholder to obtain relief against a fraudulent misappropriation, by the officers of the corporation, of its funds or securities, is not affected by the fact that he purchased his stock after the commission of the fraud which he seek to redress.   *Ramsey* v. *Railroad Co.* 8 Abb. Pr. (N. S.) 174; *Ramsey* v. *Gould*, 57 Barb. 398; *Young* v. *Drake,* 8 Hun, 61.

Plaintiffs in error can not be heard to complain as to the effect of the decree upon non-resident bondholders served by publication.   Having answered upon the merits, they can only be heard as to such errors as are personal to themselves. *Welch* v. *Post*, 99 Ill. 471; *Virden* v. *Needles*, 98 id. 366; *Henrickson* v. *VanWinkle*, 21 id. 274; *Horner* v. *Zimmerman,* 45 id. 14; *Short* v. *Raub*, 81 id. 509.

The objection that the stockholders can not sue as such, goes to their personal capacity to maintain the action, and

should have been raised by a demurrer, or by plea *in limine.* The rule of equity pleading is well established, that objections to the capacity in which plaintiff sues, should be raised by demurrer, if the disability is apparent upon the face of the bill,—otherwise, by a plea analogous to a plea in abatement at common law. Mitford's Eq. Pl. (Tyler's ed.) 245, 318-321; Story's Eq. Pl. secs. 493, 494; 1 Daniell's Ch. 52, 57, 84. See, also, *Huftalin* v. *Misner,* 70 Ill. 205.

Mr. JOHN S. MILLER, for the appellants, in reply.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The La Salle and Chicago Railroad Company was incorporated, in 1867, for the construction of a railroad from La Salle to Chicago. The act of incorporation authorized the company to borrow money, to issue bonds, to sell them at such price as they should bring, and to mortgage its property and franchises to secure the payment of the bonds. It provided that the affairs of the company should be managed by a board of directors. In 1872 the name of the corporation was changed to the Chicago and Great Western Railroad Company. On the first day of March, 1873, the directors of the company, by resolution, authorized the issue of bonds to the aggregate amount of $8,000,000, the same to be used in the construction and equipment of the line of railroad to be built. One thousand of these bonds, amounting to $1,000,000, were executed March 1, 1873, and secured by a deed of trust of the same date, conveying to the Farmers' Loan and Trust Company of New York all the property and franchises of the company. These bonds came into the hands of Emery E. Childs, the president and manager of the company.

Prior to this time, a corporation known as the Riverside Improvement Company, organized under an act approved March 11, 1869, for the purpose of purchasing, improving and selling suburban property in the vicinity of Chicago, had

become largely indebted for the purchase and improvement of certain lands at Riverside, in Cook county. Another corporation, known as the Riverside Water and Gas Company, incorporated April 6, 1869, for the purpose of supplying water and gas to the town of Riverside, had also become largely indebted and embarrassed in its enterprises at that place. Emery E. Childs, who was the president of the Riverside Improvement Company, and vice-president and general manager of the Riverside Water and Gas Company, acquired the control of another corporation, known as the Mercantile Warehouse and Loan Company, and caused its name to be changed to the Chicago and Great Western Railroad Land Company. He then caused the Riverside Improvement Company and the Riverside Water and Gas Company to convey their property to the land company, subject to a large amount of mortgage and other indebtedness. Childs then became the president and general manager of the land company. He also owned a majority of the capital stock of the Chicago and Great Western Railroad Company, and was its president and manager. Instead of using the bonds of the railroad company for the purpose of constructing its road, Childs used seven hundred and fifty of the bonds in payment and satisfaction of the debts of the improvement company, of the water and gas company, and of the land company. Childs also delivered two hundred and fifty of the bonds to Joshua C. Saunders and other persons, without any consideration accruing to the railroad company other than what will be adverted to hereafter as claimed to be such.

On the first of March, 1873, the land company executed its deed of trust, conveying certain lands at Riverside to John N. Jewett, as trustee, to secure the payment of the railroad bonds above described. The railroad bonds recite on their face that they are secured by the railroad company's trust deed, and also that the bond is entitled to the benefits and security of a special sinking fund, derived from sales of prop-

erty at Riverside, Illinois, in the manner provided by the Jewett trust deed. Default having been made in the payment of interest on the bonds, suit was brought in the circuit court of Cook county, by F. W. Peck and others, holders of the bonds, for the foreclosure of the Jewett trust deed. A decree of foreclosure was rendered, which, on being brought before this court, was modified in certain particulars. See *Chicago and Great Western Land Co.* v. *Peck,* 112 Ill. 408.

On November 27, 1884, the appellees filed their bill, setting out the above, with other facts, and alleging that on October 14, 1884, they became subscribers to the capital stock of said railroad company, with a view to carry out the purposes of said road, and to obtain subscriptions. The bill also alleged, that default was made in the payment of interest on said bonds, and that by a decree of the circuit court of Cook county, the trust deed to Jewett had been foreclosed for the benefit of the holders of said bonds. It stated the names of the owners of bonds, among them appellants, so far as known, and alleged that all acquired the bonds with full notice of the matters stated, and well knew that, as against the railroad company, they were *ultra vires* and void; that the company, through its president, had been requested to file a bill to obtain a release of the railroad deed of trust, but had refused to do so. The bill stated, that by reason of the cloud, further subscriptions could not be obtained, and appellees were greatly damaged. The prayer was, that the bonds might be decreed to be null, and that the Farmer's Loan and Trust Company should release the trust deed. Process was issued and served upon some resident defendants, among them appellants.

The answer of appellants, as well as of certain others who answered, denied that the bonds were *ultra vires,* claimed that appellants were *bona fide* holders for value, and that the question of the validity of the bonds was *res judicata,* by reason of the decree of the circuit court of Cook county.

The railroad company answered, and averred that none of the bonds were used in building or equipping its road, but were placed in the hands of its president, and used, without authority, in payment of debts of the Riverside companies above named; that said companies owned large tracts of land near Chicago, from which it expected to derive a large amount of business, provided said companies could be relieved from pecuniary embarrassment. It did not claim that said bonds were not lawfully issued, but submitted the question of *ultra vires* for determination. It admitted that it never received, directly, a money consideration for them; that it had been requested, and refused, to file a bill to procure a release of the trust deed made by it, preferring to submit said question to the decision of the court, and to remain neutral as between the stockholders and those claiming to be bondholders. The bonds show upon their face that they are secured by the two trust deeds which have been mentioned, and the Jewett trust deed makes the foreclosure of the railroad trust deed a condition precedent to a sale or foreclosure under its provisions. The Jewett trust deed recites that it was given for a debt of the railroad company. The decree entered March 4, 1885, found the facts, in substance, as set forth in the bill.

It is insisted by appellants, that the evidence, and the facts found by the decree, do not sustain the decree of the circuit court that the bonds in controversy were issued without authority of law, and were null and void as against the railroad company. The decree finds that Childs, "without any authority, used seven hundred and fifty of said bonds, and which came into his hands as the active manager of said railroad company, in satisfaction of debts and obligations of said improvement company, and said gas and water company, and of said land company, and not in any way in or about the construction, equipment or operation of the said line of railroad, and that all the persons who received said bonds from said Childs well knew that the only consideration there-

for was the indebtedness of the said several companies other than the said railroad company, and that said bonds, as against said railroad company, were *ultra vires*, and wholly null and void, * * * and that the present holders of the bonds acquired them with full notice of the matters heretofore found, and well knowing the bonds were, as against said railroad company, *ultra vires* and void." Then follows the finding as to the remaining two hundred and fifty bonds, which, being somewhat different, and more strongly against the bonds, and appellants' bonds being part of the seven hundred and fifty bonds, we will confine ourselves to the finding as to the seven hundred and fifty bonds.

It is said this finding does not exclude the fact that the bonds were used for a proper, corporate purpose; that in consideration of the payment of such debts, the land company might have agreed to construct the railroad in part, or to furnish some portion of its equipment; that such a contract would have been valid, and a delivery of the bonds in pursuance thereof would have been binding upon the company. But there is nothing in the decree, or in the evidence, upon which to base any such supposition, and it is not, therefore, to be indulged. And further, it would be inconsistent with the finding that the bonds were used in satisfaction of the debts, "and not in any way in or about the construction, equipment or operation of the said line of railroad."

Again, it is said the evidence before the court showed,—and that the decree does not exclude the fact,—not only that the seven hundred and fifty bonds were used in satisfaction of the debts of the other companies, but also that by the same transaction the land company gave to the railroad company, by the Jewett trust deed, the security of the Riverside lands for its whole authorized issue of construction bonds, to the amount of $8,000,000, and that the seven hundred and fifty bonds were used to extinguish prior liens on those lands in favor of the security thus obtained by the railroad company

for its construction bonds; that while such use of the bonds was not strictly "in any way in or about the construction, equipment or operation of said railroad," it was for a proper corporate purpose, viz., to enhance the security which the railroad company got for the remaining $7,000,000 of bonds which were authorized to be issued for the construction of its road. The $1,000,000 of bonds which were issued, were, by the Jewett deed of trust, preferred over the remaining $7,000,000, and of said $1,000,000, the first $200,000 were to be paid in the order of their numbers, in case of foreclosure. The subsequent proceedings in the *Peck case,* referred to, show a sale, under the decree of foreclosure in that case, of the premises in the Jewett trust deed, and that the proceeds of the sale failed to satisfy the first $100,000 of the bonds which Peck and others held, but left a deficiency of some $20,000.

Under these circumstances, the idea of the Jewett deed of trust furnishing any real security for the remaining $7,000,-000 of railroad bonds which were authorized to be issued for the construction of the railroad, was too mythical to be counted upon as a substantive matter, and justified the court in finding that such alleged security was but nominal,—one existing merely on paper,—and that the bonds were used in the payment of the debts of the said Riverside companies, simply, and not in any way for the benefit of the railroad. We think that is the fair import of the court's finding. Such use of the bonds for the payment of the debts of the Riverside companies was not for a corporate purpose. It was a breach of trust, and made the delivery of the bonds illegal and void as against the railroad company. (See *Pearce* v. *Madison and Indianapolis Railroad Co.* 21 How. 441.) Appellants having taken the bonds with full notice of all the facts as to their issue, do not occupy the position of *bona fide* holders for value, and stand in no better situation than those to whom the bonds were at first delivered. We can not say the decree is not sustained by its finding of facts and the evidence.

It is insisted, the complainants were not entitled to bring the suit; that the relief asked should have been sought by the corporation; that it was not the province of the stockholders to seek it in despite of the corporation. Generally, it is so, that actions to obtain relief against wrongful dealings with the corporate property, by directors and officers, must be brought by and in the name of the corporation; yet courts of equity recognize that the stockholders are ultimately the only beneficiaries, and there are well recognized cases in which a stockholder may individually bring suit. The doctrine is laid down by Mr. Pomeroy in his work on Equity Jurisprudence, (vol. 3, page 10,) as follows: "Wherever a cause of action exists, primarily in behalf of the corporation, against directors, officers and others, for wrongfully dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation, *either actually or virtually*, refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers and other persons; but it is absolutely indispensable that the corporation itself should be joined as a party—usually as a co-defendant." The author proceeds afterward to state wherein the corporation's refusal to prosecute may be virtual, and is not required to be actual in order for a stockholder to sue, as, where there is a reasonable certainty that a demand for a suit by the corporation would be nugatory,—that in such case the stockholder may bring the suit without first having requested the managing body of the corporation to do so. It is here found that the corporation, through its president, was requested and refused to bring suit. Childs appears to have been the head and front of all these Riverside companies, and to have himself constituted about

all there was of the railroad company. The decree finds that he was its president and manager, and the owner of a majority of its stock. He was the president and manager of the land company, a principal officer in the improvement and in the gas and water companies, and he induced the latter companies to convey their property to the land company. He was the officer who committed the breach of trust. Under the circumstances, we think it may be inferred, with reasonable certainty, that had request been made of the board of directors, or other managing body of the corporation, to bring suit, it would have been refused. We are of opinion that the facts found and appearing present a proper case, under the authorities, for a suit by a stockholder.

It is then said, that although a stockholder may interfere to *prevent* an unlawful transaction where the corporation will not act, yet where an act has been consummated, if the corporation will not act the stockholders can not, except as against directors or others who have been guilty of a breach of trust. In its application to this case, we do not appreciate the force of this distinction. If the court would have interfered to prevent the delivery of the bonds to pay the debts of other corporations, we must think, that where there has been such delivery, and the bonds still remain in the hands of the wrongful recipients, or those standing in their position, equity will in like manner interpose to cancel the bonds and release the trust deed; that where a misapplication of the bonds would have been restrained from being made, such misapplication, if made, would be redressed where capable of being adequately rectified. There would be good defence against the bonds, and they could not be enforced in the hands of present holders. Why may not the bonds be arrested, and not suffered to pass into the hands of innocent holders, where they might be enforced? Or why be left to remain a cloud upon property, to its great injury?

It is contended that the validity of these bonds, as the bonds of the railroad company, and of the railroad mortgage, was

adjudged in the Peck suit. That was a suit brought by Peck
and others against the Chicago and Great Western Railroad
Land Company, to foreclose the Jewett trust deed, which had
been given by that company upon its lands to secure the pay-
ment of these railroad bonds.   There is a difference between
the effect of a judgment as a bar or estoppel against the
prosecution of a second suit upon the same cause of action,
and its effect as an estoppel in another suit between the same
parties upon a different cause of action.   In the former case,
the judgment, if rendered upon the merits, constitutes an
absolute bar to a subsequent action.   But where the second
suit is upon a different cause of action, the inquiry must
always be as to the point or question actually litigated and
determined in the original action, and only upon that is the
judgment conclusive in another action.   This distinction is
very clearly pointed out in *Cromwell* v. *County of Sac*, 94 U. S.
351.   And see *Russell* v. *Place*, id. 606 ; *Riverside Co.* v. *Town-
send, ante,* p. 9.

It is very clear that the cause of action is not the same
in the present suit as in the *Peck case;* and we are satisfied
that the question of the validity of these bonds, as against
the railroad company, was not litigated and determined in
the Peck suit. It appears from that case, (112 Ill. 408,) that
various parties held claims against the Riverside Improvement
Company, and the Riverside Water and Gas Company, some
unsecured, others secured by various trust deeds, and some
represented by stock, bonds and other evidences of debt, and
that all the evidences of these various classes of indebtedness
were given up and exchanged for bonds of the Chicago and
Great Western Railroad Company, secured by the Jewett trust
deed executed by the Chicago and Great Western Railroad
Land Company, to which latter company the other named
Riverside companies had conveyed all their property.   As
between the various companies which were merged into the
land company, and these creditors, the transaction amounted

to a mere changing of the form of the evidence of indebtedness. These bonds might be considered as in reality, although not in form, those of the land company. The provisions of the two trust deeds were such, that that of the land company could not be foreclosed until after the railroad trust deed had been. The allegations against the railroad company in the Peck bill were, that it had no assets *in esse*, and nothing upon which a foreclosure could operate which was of any pecuniary value, and that Childs, as the managing officer of both companies, had been guilty of fraud in so framing the trust deeds as to prevent a foreclosure of the Jewett or land company trust deed. The railroad company was made a party, and was defaulted.

It was averred in the Peck bill, "that said railroad company issued, *honestly and legally*, about \$750,000, only, in railroad bonds; * * * that besides \$750,000 in bonds, said railroad company, afterwards, under the direction of said Emery E. Childs, wrongfully and fraudulently issued about \$250,000 of railroad bonds;" that the complainants had the same right to foreclose the Jewett trust deed for the amount due upon the bonds "*lawfully issued* by said railroad company," as if the railroad trust deed had been first foreclosed. And in the decree in that case the statement appears, that "the total amount of bonds professedly issued by said railroad company was \$1,000,000, but the amount *legally and in good faith* issued, and now outstanding, is less than \$1,000,000." From these expressions in the bill and decree, touching the lawful issue of bonds, it is argued, that an issue that the bonds were valid as against the railroad company was directly made by the allegations of the pleadings and found by the decree. We do not think this to be the fair construction. The purpose of these allegations was to have excluded from the benefit of the trust deed a portion of the bonds, and not to raise an issue with the railroad company as to whether it had received a consideration for the bonds, and the bonds were valid as

against that company. At the utmost, this statement in the decree would be of no practical avail as a determination of the precise question here involved, it not mentioning what or how many bonds were "legally and in good faith issued."

But it is said, the issue in the *Peck case*, as to the right of foreclosure of the Jewett trust deed without a foreclosure of the railroad mortgage, necessarily involved the question of the validity of such railroad mortgage, and that its decision necessarily decided that point. This is not apparent to us. The decision that it was not necessary to have first foreclosed the railroad mortgage, would imply that there had been some sufficient excuse shown for the non-foreclosure of that mortgage; but we fail to see any necessary implication therefrom that the bonds had been adjudged to be valid as against the railroad company.

We do not find that there was any issue made in the Peck suit as to the validity of the bonds as against the railroad company. We do not perceive that it was material in that suit to allege or prove such validity of the bonds, and we do not find that the question of the validity of the bonds as against the railroad company was raised and determined in that case. We are hence of opinion, that the decree there can not be set up in this case as an adjudication of the question of the validity of the bonds as against the railroad company.

The claim of an equitable estoppel in this case, which is urged against appellees, and the cases cited in support thereof, of *Bradley* v. *Ballard*, 55 Ill. 413, *Chicago Building Society* v. *Crowell*, 65 id. 453, *West* v. *Madison County Board*, 82 id. 206, and others of like purport, do not apply here. Those were cases where the corporation had received the benefit of the transaction which it sought to impeach; and it was held, that when the corporation had received and applied a valuable benefit to the purposes of the company, it should be estopped from repudiating the obligation given therefor. But, as we have already remarked, there was no real consideration

received by the railroad company. The supposed benefit that might be received was entirely fanciful.

It is insisted that there has been acquiescence here, and *laches* in not sooner bringing the suit, which should bar maintenance of the bill. Some eleven and a half years elapsed after the transaction before the bringing of the bill, and during that time there does not appear to have been any dissent on the part of the corporation or any stockholder. This is not a case where the corporation has lain by and suffered its bonds to be dealt in and pass from hand to hand on the faith of their validity. The expectation was, from the sale of the bonds in the market to raise the means to build the railroad. But there was an inability to sell the bonds, and the project of building the road seemed to have utterly fallen through. The Jewett trust deed, to secure the payment of the bonds, was foreclosed, and not enough realized therefrom to pay the first one hundred of the bonds. It was a condition of that trust deed, that the trust deed given by the railroad company on its property and franchises should first be foreclosed and exhausted before resort to the Jewett trust deed. But so utterly worthless were the property and franchises of the railroad company deemed, that the Jewett trust deed was allowed to be foreclosed without first foreclosing the railroad trust deed, it being held by the court that the foreclosure of that trust deed would be fruitless, and but an idle act. Thus the matter stood and remained,—the enterprise of building the railroad seemingly a total failure. There was no attempt to enforce payment of the bonds against the railroad company; there could have been no dealing in the valueless bonds, and there was no occasion to file any bill to cancel the bonds. To do so would have been an useless expenditure, which it is not to be supposed any one would have been willing to incur. No sign of life was exhibited on the part of this apparently defunct corporation and enterprise until these appellees moved in the matter. Under the circumstance of such suspended

animation, there can hardly be said to have been acquiescence. The building of the railroad would be for the public benefit, and desirable to have accomplished. If these appellees saw the way for carrying out the enterprise of the road's construction, we think they should receive encouragement, and be permitted, notwithstanding the length of time after the transaction sought to be impeached, to file their bill to remove the incubus of this railroad mortgage from the franchises of the company.

It is urged that the Chicago and Great Western Railroad Land Company is a necessary party in the case; that the trust deeds show the railroad company was the primary debtor, and the land company stood in the relation of surety to the railroad company, and the decree in this case, in the absence of the land company, assumes to adjudge the land company is the principal debtor, and that the bonds of the railroad company were issued solely for the benefit of the land company, and the other Riverside companies. This is a matter not personal to the appellants, and, as we think, is not for them to complain of. The decree will not be binding upon the land company, and will leave it free hereafter to assert any rights which it may claim to have against the railroad company.

It is said, the decree is plainly erroneous in finding that unknown holders of bonds took them with knowledge of the facts alleged in the bill, and in decreeing the bonds *ultra vires* as against parties not properly before the court,—that it was impossible for the court below to be informed of the state of knowledge of persons who were unknown to the parties and to the court. The same answer may be made as above,—that this is a matter which does not affect appellants, and of which they should not be heard to complain.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

MAGRUDER, J., took no part in the decision of this case.