[No. 13039. Department One. July 11, 1916.]

## M. L. BERGMAN, *as Bergman Clay Manufacturing Company, Respondent*, v. J. H. EVANS *et al., Appellants.*[1]

CORPORATIONS — STOCK SUBSCRIPTION — ENFORCEMENT BY STOCK-HOLDER—NECESSITY FOR CALL. A call for unpaid stock subscriptions is not a condition precedent to an action by an injured stockholder, who had paid for his stock in full, to collect for the corporation unpaid subscriptions payable on twenty days' notice, from stockholders controlling the directors who refused to make a call upon demand and necessity therefor; the action being equivalent to a call, which a court of equity had power to order.

APPEAL—REVIEW—PLEADINGS—AMENDMENTS. Upon a trial *de novo* on appeal, the complaint will be deemed amended to conform to the proof.

EVIDENCE—PAROL TO VARY WRITING—SUBSCRIPTION CONTRACT. In the absence of fraud, a written subscription contract agreeing to pay for the number of shares of stock set opposite the names of the subscribers, cannot be varied by evidence of a contemporaneous oral agreement that the subscribers would not be required to pay more than the sums already paid.

CORPORATIONS — STOCK SUBSCRIPTIONS — LIABILITY — FRAUD. An agreement with one subscriber not to enforce his subscription in full, is not such an element of fraud as to release other subscribers, where it does not appear that creditors had notice of the agreement.

SAME—STOCK SUBSCRIPTION—ENFORCEMENT BY STOCKHOLDER—LIA-BILITY—EXTENT. In an action by a stockholder who had paid for his

[1]Reported in 158 Pac. 961.

stock in full to enforce payment by the delinquent stockholders, in order to pay debts of the corporation, the recovery is not limited to the *pro rata* amount required to pay creditors and wind up the affairs of the corporation, where it was a going concern and could continue business if the stock was fully paid up.

SAME—ENFORCEMENT BY STOCKHOLDER—LACHES.  An action by a subscriber who had paid for his stock in full to enforce payment by delinquent stockholders is not barred by laches in that he had participated with other directors in borrowing money for the corporation and waited seven years before complaining, where there were no changed conditions during such delay inducing any action to the prejudice of the delinquent stockholders.

SAME—ENFORCEMENT BY STOCKHOLDER—DEFENSES.  A stockholder's action to collect for the corporation unpaid subscriptions of delinquent stockholders is not prejudiced by the fact that plaintiff's subscription was not fully paid up.

SAME—ENFORCEMENT BY STOCKHOLDER—LIABILITY—INTEREST.  In a stockholder's action to collect for the corporation unpaid subscriptions of delinquent stockholders who controlled the directors and refused to make a call, interest is properly allowed from the date upon which written demand was served on the directors to make a call and refused, and not from the date when the corporation was wrongfully forced to borrow money by their failure to pay up on the stock.

Cross-appeals from a judgment of the superior court for Spokane county, Blake, J., entered February 1, 1915, upon findings in favor of the plaintiff, in an action to enforce unpaid stock subscriptions, tried to the court.  Affirmed.

*Twitchell & Wentworth*, for appellants.

*F. W. Girand*, for respondent.

FULLERTON, J.—The respondent, a minority stockholder in the Bergman Clay Manufacturing Company, brought this action, in the name and for the benefit of that company, against the appellants to compel the payment of balances due on their unpaid stock subscriptions.  Different phases of the controversy have been before this court in the past, and are reported in *Bergman Clay Mfg. Co. v. Bergman*, 73 Wash. 144, 131 Pac. 485, and *Triplett v. Bergman*, 82 Wash. 639, 144 Pac. 899.  In the first of these cases, we reversed a judgment placing the company in the hands of a receiver,

charged, among other things, with the recovery of the un-
paid stock subscriptions in issue here.   The court further
held that, inasmuch as the directors had failed for a long
period to call in unpaid stock subscriptions for the purpose
of paying debts, a stockholder might make and enforce the
call in the name and for the benefit of the corporation.

The complaint alleges, that appellant Evans had sub-
scribed in writing for 6,500 shares of the capital stock of
the Bergman Clay Manufacturing Company, at one dollar
per share, and had failed to pay for 4,250 of such shares;
that appellant Hurd had subscribed for 6,000 shares, and
had failed to pay for 3,750 of such shares; that appellant
Davie had subscribed for 2,000 shares, and had failed to
pay for 1,000 of such shares; that appellant Erickson had
subscribed for 1,665 shares, and had failed to pay for 665 of
such shares; that respondent Bergman had subscribed for,
and had fully paid for, 6,500 shares, and is now the owner of
5,284 shares; that, between the years 1905 and 1912, the
corporation borrowed money to the extent of several thous-
and dollars and paid interest thereon, making the same a
charge against the corporation to the prejudice of respond-
ent; that the Idaho Lime Company and the Bergman Clay
Manufacturing Company are controlled by the same board
of directors, appellants Evans and Hurd being directors of
both companies, and that the lime company is indebted to
the clay company by reason of a contract between them in
the sum of $19,000; and further,

"That the directors of the Bergman Clay Manufacturing
Company have refused to make a call upon the stockholders
for their respective unpaid subscriptions and still now refuse
to make said call, that this action is brought by the plaintiff
in the name of and for the benefit of the corporation to re-
quire and compel each of the defendants to pay the amount
due upon their unpaid stock subscriptions; that, between the
years 1905 and the present time, said corporation, Bergman
Clay Manufacturing Company, has been indebted to various
parties, and was in need of the money due upon the stock

subscriptions of each of the defendants herein to pay and meet its obligations, and was in need of funds to carry on its business; that the Bergman Clay Manufacturing Company now owes various creditors large sums of money by reason of the directors of the Bergman Clay Manufacturing Company having borrowed money in the name of the Bergman Clay Manufacturing Company; that it is necessary to collect the unpaid stock subscriptions of the defendants mentioned herein for the purpose of liquidating said indebtedness."

Judgment for the benefit of the clay company was prayed against J. H. Evans for $4,250; against J. A. Hurd for $3,750; against J. T. Davie for $1,000; and against Peter Erickson for $665; with legal interest on such sums from the time when they should have been paid.

The answer of each appellant was a denial of practically all the foregoing allegations, and as an affirmative defense, each alleged that the respondent was a director and president of the company from the time of its incorporation until June, 1912; that all the money borrowed by the company was borrowed under the direction of the directors in meeting assembled, and that the respondent was present at all such meetings and voted for all resolutions to borrow money; that no objection was made by the respondent until he was deposed as a director; that the respondent was guilty of laches in standing by and permitting the affairs of the company to be so carried on without any objection, and that he is estopped from complaining of such action of the board; that he persuaded appellants to become incorporators in the company by false representations as to his competency to make white face brick and sewer pipe and other clay products cheap enough to sell at a profit; that the shares of stock were subscribed for by the appellants under an express agreement with respondent that no more of said subscriptions should ever be paid than the sums of $2,000 by the appellant Evans, $2,000 by the appellant Hurd, $1,000 by the appellant Davie, and $1,000 by the appellant Erickson; that the re-

6—92 WASH.

spondent promised, in case more money should be necessary for carrying on the business, that he would sell and dispose of the balance of the stock contracted for by the appellants; and that no call has been issued by the board of directors of the company or by any one. The reply denied all affirmative matter contained in the answers of the various appellants.

The court found for the respondent on all the issues and gave judgment against J. H. Evans for $4,876.16, against J. A. Hurd for $4,302.50, against J. T. Davie for $1,156.66, and against Peter Erickson for $762.94, these sums including legal interest on the amount of the unpaid subscriptions from August 16, 1912, the date upon which the court found that the board of directors should have issued a call pursuant to the written demand of respondent.

The stock subscription contract, which was attached as an exhibit to the answers of the appellants and produced in evidence, was in the following terms:

"Be it remembered, That on this 28th day of February, 1905, the Bergman Clay Manufacturing Company of Spokane, Washington, being now duly incorporated under the laws of said state by its trustees, did, under and by virtue of the power and authority conferred so to do by said laws and articles of incorporation, and hereby does open a subscription list and call for subscriptions to the capital stock of the said corporation, which capital stock consists of twenty-five thousand shares of the par value of one dollar per share.

"Subscriptions to the said stock are payable upon call, on twenty days' notice issued by the board of directors, and no certificates of stock shall be issued until the same are fully paid for at par, provided any subscriber or his assignee may have certificates of stock issued for any portion of his subscription that shall have been fully paid for at par.

"We, the undersigned, each for himself, hereby subscribe to the capital stock of the said corporation, subject to the above conditions, and agree to pay for the number of shares of said stock set opposite our respective names, in consideration for certificates of shares of said stock duly issued and delivered to me or my order upon the same and to the extent that this subscription has been fully paid for at par, to wit:

Name.                                    Number of Shares.
Martin L. Bergman, six thousand five hundred......6500
C. A. Johnson, twenty-three hundred thirty-five.....2335
James H. Evans, six thousand five hundred.........6500
Jno. A. Hurd, six thousand.....................6000
John T. Davie, two thousand....................2000
Peter Erickson, sixteen hundred sixty-five..........1665."

The evidence shows that, in February, 1905, the appellants and respondent, with one Johnson, organized the Bergman Clay Manufacturing Company with a capital stock of $25,000, and that the incorporators subscribed for all the shares; that respondent has fully paid for his shares; that as to the appellants, Evans paid $2,250 on his $6,500 subscription, Hurd paid $2,250 on his $6,000 subscription, Davie paid $1,000 on his $2,000 subscription, and Erickson paid $1,000 on his $1,665 subscription; that from the time of organization in 1905 until June 4, 1912, the board of directors consisted of the respondent and the appellants; that the cash paid in on the stock was exhausted within six months, and that the company borrowed $3,000 from a bank on July 11, 1905, $500 from appellant Evans on October 2, 1905, and $1,000 more from Evans on the 16th of October; $2,-802.50 from the Idaho Lime Company on the 12th and 13th of December, 1905; and in the year 1906, from the Fidelity National Bank, $1,000 on February 3, $1,000 on February 16th, $1,000 on March 13, $1,000 on March 29, and $1,000 on April 12; that at the time of trial, $4,000 remained due the bank, and between six and seven thousand dollars to the Idaho Lime Company, making the existing indebtedness about $10,700. Interest had been paid on all the loans except the lime company account. The only evidence as to profit and loss of the clay company was that, in 1909, it made a net profit of $420; in 1910 more than $5,000; that it lost $4,-100 in 1911, and that in the following year the plant was shut down. No dividends were ever declared.

The respondent testified that, as president, he signed the stock certificates in 1906, and demanded that appellants pay

the balance of their subscription; that he had on various occasions subsequently made demand for the unpaid balance. The appellants dispute this and claim that demand has never been made. There was satisfactory evidence, however, that they, as directors, were served August 16, 1912, with written demand on the part of respondent to issue a call for the payment of the balance of their subscriptions, but had never complied with the demand. Respecting the organization of the company and the stock subscriptions, appellant Evans testified that appellants agreed to put in $6,000 cash as against the plant of Bergman and Johnson, which was valued at $9,000, and capitalize the company at $25,000; that Bergman said $6,000 would be all the money he would require; that Bergman represented that other people were anxious to invest in the corporation stock and would buy the unpaid stock if the company needed money; that it was particularly understood that appellants would not be called upon to put up more than they had paid in; that when it came to a lack of funds he told Bergman "now is the time to get these people to take up that stock; that we need money, and you will have to go to the bank and get it if you do not sell the stock." The evidence as to the limit on the liability of appellants was admitted over the objection of respondent that it was an attempt to vary a written instrument by a contemporaneous oral agreement. Evans' testimony as to an agreement that appellants were not to be called upon to pay their full subscriptions was not corroborated by the other stockholders, except to the extent that Davie testified Bergman said others wanted to go into the company and there would be no trouble in getting money. Evans was in fact contradicted by Erickson, who testified that he had no agreement with Bergman whereby he would not be required to pay the balance due on his stock subscription. The evidence showed that Bergman had participated in the action of the other directors in borrowing money to meet the necessities of the company, and that no call was made upon the unpaid

subscriptions for meeting the exigencies of the company until after Bergman was deposed as manager and director in the year 1912.

The evidence responding to the allegation of fraud in the complaint was that respondent represented that he could manufacture at a profit white face brick such as was turned out by a competing brick company, but that the brick he actually manufactured would not stand the weather, and that after a year's trial the company gave up making that kind of brick, and devoted itself to fire brick and sewer pipe.

The first contention of appellants is that the respondent failed to state a cause of action, because the complaint did not allege that a call had been made by the directors in which notice was given fixing a time for payment, upon which default had been made by appellants. It is urged that notice of a call is a condition precedent to the right to sue when such notice is required by subscription, by statute, or by by-laws. Our statute, Rem. & Bal. Code, § 3694, requires corporate trustees to make the call upon proper notice, and the contract itself in this case provided: "subscriptions to the said stock are payable upon call on twenty days' notice issued by the board of directors." The rule above outlined is a proper one when applied to a proper case. But counsel seem to overlook the fact that this is not an action founded on a call for unpaid subscriptions. It is an action in equity by an injured stockholder, who has paid for his stock in full, against delinquent stockholders, who are at the same time controlling directors of the corporation, for their refusal to call for unpaid subscriptions which they themselves owe. The suit in itself is equivalent to a notice of call, and a court of equity has power to make the call on a proper showing, such as we think has been made in this case. The law of this case has already been determined in *Bergman Clay Mfg. Co. v. Bergman*, 73 Wash. 144, 131 Pac. 485, where the appointment of a receiver to collect these same delinquent subscriptions was denied. In that case the court said:

"A subscriber to the capital stock of a corporation is, in virtue of his promise, a debtor, and the same principle that sustains the right of a stockholder to bring an action for the benefit of the corporation will sustain the suit of a stockholder to compel the payment of unpaid subscriptions. In fact, the right of a receiver to sue for unpaid subscriptions has been put on the ground that in so doing he is doing only that which the stockholder might have done. In *Lathrop v. Knapp*, 27 Wis. 214, 232, the right of a receiver to maintain an action for unpaid subscriptions was challenged. In meeting the objection of the defendant, Chief Justice Dixon said:

" 'The other subscribers might have maintained an action against him upon it [the subscription]; and as they might, so I think this receiver may.'

"The statute, Rem. & Bal. Code, § 3694, provides that the stockholders of a corporation may, in the by-laws of the company, prescribe the times, manner and amounts in which payments of the sums subscribed by them respectively shall be made.

" 'But in case the same shall not be so prescribed, the trustees shall have the power to demand and call in from the stockholders the sums by them subscribed, at such time and in such manner, payments or installments, as they may deem proper.'

"The statute does not confer autocratic powers. The power here conferred is one that must be reasonably exercised for the benefit of the corporation and its stockholders. The directors could not continue from 1905 to 1912 to borrow money and pay interest, making the same a charge against the corporation, to the prejudice of the respondents who had paid their subscriptions. When it became evident to the directors that the corporation was in need of funds to carry on its business, and after a reasonable time had elapsed, it became their duty to make the call upon the stockholders for their unpaid subscription, and if the call was not complied with, to enforce payment in the manner provided by law. In short, it was their duty to exercise good faith to all the stockholders. Having failed to do this for so long a period of time, the principles of equity will permit the respondents to make and enforce the call in the name of and for the benefit of the corporation."

The complaint is sufficient on the theory on which it was framed. But were it otherwise, the cause is here for trial *de novo,* and the complaint will be deemed amended to conform to the proofs. The evidence also shows that the company is indebted to the extent of nearly $11,000, which is practically the amount due on the unpaid subscriptions, and that their collection is necessary to liquidate the corporate indebtedness.

The next contention is that the evidence discloses an agreement among the appellants and respondent that no assessment would ever be levied upon the unpaid stock and that appellants would never be required to pay any more than the sums already paid. We are satisfied that the preponderance of evidence is against this contention. But, in our view, evidence tending to show such an agreement is inadmissible, since it would be to permit parol evidence of a contemporaneous oral agreement to vary the terms of a written contract. The subscription contract recites that the subscribers each "agree to pay for the number of shares of said stock set opposite our respective names." But, moreover, it is not pleaded nor proven that this agreement was made with the corporation or with all of its stockholders, or that creditors dealt with the corporation with notice of the agreement. The allegation is that the agreement was made with one of the subscribing stockholders. This is not such an element of fraud as will serve as a defense against the liability of appellants on their subscriptions; and in the absence of fraud, the parol condition varying the terms of the written subscription is void. 10 Cyc. 413.

All oral agreements, whether prior or contemporaneous, are merged in a subscription contract which has been reduced to writing and signed, and parol evidence is inadmissible to vary its legal import by showing that a subscription was conditional. *Collins v. Southern Brick Co.,* 92 Ark. 504, 123 S. W. 652. See, note to same case in 19 Am. & Eng. Ann. Cas. 883.

The further contention is made that there can be collected from the subscribers to the capital stock only so much *pro rata* as is required to pay creditors and wind up the affairs of an insolvent corporation.   But this is not an action instituted by a receiver of an insolvent company for the purpose of recovering on unpaid stock.   The evidence does not disclose insolvency, but rather that the corporation would be a going concern were its unpaid subscriptions collected.   The action is not instituted for the purpose of liquidating the indebtedness of a defunct institution, but one to recover what is due from subscribers towards its assets.   On this point it is remarked in *Chamberlain v. Piercy*, 82 Wash. 157, 143 Pac. 977:

"There is a marked distinction between the purpose of an action instituted by a corporation while it is a going concern for the purpose of recovering unpaid subscriptions, and an action instituted by a receiver after insolvency for the purpose of recovering for unpaid stock.   In the former, the primary object is to collect money to further the business and purposes of the corporation and continue it as a going concern."

Appellants also contend that respondent is estopped by his laches and conduct from urging this action.   In support of this they maintain that, with knowledge that the subscriptions had not been paid in, he participated with the other directors in borrowing money for the corporation, and waited seven years before complaining that their failure to pay up was an injury to the company.   But there is no showing that appellants have been in any wise prejudiced by the action of respondent, or that changed conditions have taken place during the period of delay.   The principle of laches is well stated in *Young v. Jones*, 72 Wash. 277, 130 Pac. 90, where the court said:

"The doctrine of laches as a defense is grounded on the principle of equitable estoppel, which will not permit the late assertion of a right where other persons by reason of the

delay will be injured by its assertion. . . . There is no evidence that the respondents or any one else will be placed in any worse position by a reformation because of the delay. No adverse equities have arisen in the interim. The fact of appellants' claim was at all times known to those claiming adversely. There was no evidence of fraud, deceit, or bad faith on the appellants' part."

Laches is not a bar to a stockholder's action, if neither the defendants nor others have been thereby induced to act upon the matters complained of. *Whitman v. Bowden*, 27 S. C. 53, 2 S. E. 630; *Chicago v. Cameron*, 120 Ill. 447, 11 N. E. 899; nor is it a bar where the illegal acts continue up to the date of the suit. *McConnell v. Combination Min. & Mill. Co.*, 30 Mont. 239, 76 Pac. 194, 104 Am. St. 703.

One of the errors assigned is the trial court's refusal to admit testimony showing when respondent's subscription was paid. The court ruled against this testimony on the ground of its being immaterial, full payment of respondent's stock subscription being conceded by appellants. In support of this assignment, it is urged that appellants should have been permitted to show that respondent's stock was not fully paid for on August 17, 1912, the date from which the court allowed interest on the subscriptions of appellants. There are two answers to this contention. The corporation's right of recovery in an action on the subscriptions of certain stockholders would not be affected by the fact that another stockholder was similarly indebted. But if such contention were material, the record in the case of *Bergman Clay Mfg. Co. v. Bergman* disclosed that respondent paid the balance due on his subscription into court during the trial of that case, the judgment in which was rendered August 17, 1912.

By way of cross-appeal, the respondent contends that interest on the unpaid subscriptions should have been allowed from July 11, 1905, the date of the first moneys borrowed by the corporation. The court allowed interest only from Aug-

ust 16, 1912, the date upon which the directors had been served with written demand by respondent to make a call, with which they refused to comply. The general rule is that interest is due only from the day the subscriber is placed in default. *Jackson Fire & Marine Ins. Co. v. Walle*, 105 La. 89, 29 South. 503. Ordinarily, the subscriber would not be in default until notice of a call by the corporation, or failure to pay on a day specified by the terms of his subscription. No call by the corporation was ever made, and the written demand in 1912 was the first initiation of proceedings to procure one after the failure of the directors to act.

While there is some equity in respondent's claim that the directors were wrongdoers in borrowing money rather than calling in unpaid subscriptions, which they themselves owed, we are satisfied the decree of the court does substantial equity in the matter of interest by making it payable from the date when specific demand for a call was made and refused.

Finding no error in either appeal, the judgment is affirmed.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.