[No. 23234. *En Banc.* March 3, 1932.]

MALCOLM McDONALD *et al.*, *Appellants*, v. JAMES H.
WYANT, *Respondent.*[1]

*E. D. Germain*, for appellants.
*Fisk & McCarthy*, for respondent.

MILLARD, J.—This action was brought to enforce
payment of a real estate broker's commission. The
trial of the cause to the court resulted in judgment in
favor of the defendant, the court finding that the de-
fendant never received any money

"  . . . on account of the purchase price of said
premises, and received no money whatsoever out of
the sale of the timber removed therefrom by the said
Fred T. Hall . . . That at the time said contract
was executed . . . it was understood and agreed

[1] Reported in 8 P. (2d) 428.

by and between the defendant and the said W. E. Blair that said sum of six hundred dollars was to be paid out of the proceeds derived from the sale of said premises at the rate of one dollar per thousand feet as the timber therefrom was cut and removed by the said Fred T. Hall, which agreement was thereafter reduced to writing, and that the right of the said Blair to any compensation for such services was entirely dependent upon the receipt of the purchase price by the defendant."

The plaintiffs appealed.

The facts are as follows: A tract of timber land in Cowlitz county was, pursuant to an agreement with the respondent owner, sold March 27, 1929, by W. E. Blair, a real estate broker, to Fred T. Hall and wife. The sale contract provided that Hall *et ux.*, the parties of the second part, should pay the purchase price to Wyant, the party of the first part, in the following manner:

"Parties of second part are to remove all merchantable timber on premises, commencing at southwest corner, and continue until total amount has been removed, all timber to be removed within six months from date hereof, to market same and all payments to be made through said bank, said bank to credit party of first part with $3.50 per thousand B. M. for all timber marketed until full purchase price has been paid; in case the returns from timber should be insufficient, then it is hereby understood and agreed that any remaining balance shall be paid within one year from date hereof, plus one hundred dollars per month for time party of first part stays on premises and supervises planting and harvesting of crops, parties of second part to board party of first part until crops are harvested, party of first part to have privilege of checking sales of timber at all times."

When the sale contract was signed by the parties, respondent Wyant signed the following indorsement on the contract:

"I hereby ratify and confirm the employment of W. E. Blair, real estate broker, to find and procure purchaser for my property, and in consideration of services performed in bringing about the foregoing sale, I hereby agree to pay him the sum of six hundred dollars."

On April 1, 1929, five days subsequent to the sale, Wyant paid to Blair one hundred dollars, for which Blair delivered to Wyant a receipt reading as follows:

"$100.                                    April 1, 1929.
"Received from James H. Wyant one hundred and no/100 dollars part pmt. commission on sale of farm W ½ SW ¼ and S ½ NW ¼ Sec. 22, T. 10 R. 1 E. W. M. Bal. of $500 to be paid at rate of $1.00 per M. as logging is done.          (Sgd.) W. E. Blair."

Approximately three hundred thousand feet of logs were removed from the land and sold. For this timber, the respondent, up to the time of the trial of this cause, had not received payment from Hall. In addition, two hundred thousand feet of logs were cut and left on the land. The marketing of this lot of timber was prevented by the respondent, who successfully prosecuted an action to enjoin removal of the timber and to cancel the contract because of Hall's failure to pay for logs cut.

Blair assigned to the appellants his interest in the commission for making the sale. Upon the refusal of Wyant to pay the broker or the broker's assignees, the assignees instituted this action to recover the balance due of five hundred dollars.

Appellants contend that the trial court erred in finding that respondent's promise to pay the broker's commission was contingent upon the receipt by the respondent of the purchase price from the vendee as the timber was marketed, and that the trial court erred in permitting the respondent to testify that he and the broker made an oral agreement to that effect, prior

52

to the execution of the sale contract between Hall and respondent.

█ The written promise of Wyant on March 27, 1929, to pay Blair six hundred dollars was an unconditional promise. The court erred in admitting the testimony as to the prior or contemporaneous oral agreement which depended upon a condition subsequent—the cutting and marketing of the timber. The written instrument is free from ambiguity, and respondent does not claim there was any fraud or mistake, hence parol evidence of prior or contemporaneous agreements is inadmissible to show the intentions of the parties were different from what is expressed in the writing.

"The ruling that parol evidence is not admissible to contradict a written contract usually is spoken of as a rule of evidence. It is a rule of evidence, but it is a rule of evidence founded on the substantive rights of the parties, namely, that, where the trade finally struck between the parties is put in writing, the writing sets forth the trade which is struck. For that reason evidence that during negotiations the plaintiff agreed by word of mouth that the defendant should be its 'sole' agent, although not objected to, is not of consequence." *Butterick Publishing Co. v. Fisher,* 203 Mass. 122, 89 N. E. 189, 133 Am. St. 283.

"Where the law requires a written instrument, or where parties adopt that mode of contracting, it is a matter of principle and policy to prevent inferior evidence from being used, either as a substitute for or an alteration of the written contract. Having deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking, have been reduced to writing, and parol evidence is not permitted to vary or contradict the terms of such writing, or to substitute a new or differ-

ent contract for it. Exceptions to the rule which excludes parol evidence varying or contradicting a complete and unequivocal written contract are recognized only when clearly necessary and proper, because of their natural tendency to invite perjury and fraud and to deprive formal agreements of their certainty.'' 10 R. C. L. 1018.

See, also, *Whitman Realty Investment Co. v. Day,* 161 Wash. 72, 296 Pac. 171; *Staver & Walker v. Rogers,* 3 Wash. 603, 28 Pac. 906; *Bergman v. Evans,* 92 Wash. 158, 158 Pac. 961, Ann. Cas. 1918C 848.

*Reiner v. Crawford,* 23 Wash. 669, 63 Pac. 516, 83 Am. St. 848, upon which respondent relies, is not in point. In that case, the written instrument never became operative as a contract because of a separate oral agreement constituting a condition precedent to the attaching of any obligation thereunder. The contract was for the sale of certain stock to the plaintiff by the defendants. By contemporaneous oral agreement, the parties stipulated that the contract was not to take effect if defendant's agent at Spokane had sold the stock prior to plaintiff's arrival in that city.

The writing signed by Blair, evidencing receipt by the broker of one hundred dollars from respondent, recites that the balance of five hundred dollars due to the broker was ''to be paid at the rate of one dollar per M. as logging is done.'' That receipt, the same as the contract, ''cannot be controlled by parol evidence, so far as it operates as a contract, any further than ordinary contracts may be.'' 10 R. C. L. 1026.

There is no evidence, other than respondent's testimony, that Blair agreed to make the payment of his commission dependent upon the ability of respondent to collect the purchase price of the land and the personalty thereon from the vendee as he cut and marketed the logs.

Under respondent's theory, that the meaning of the receipt is that the five hundred dollars which the respondent promised to pay to the broker was to be paid as the timber was marketed, the appellants are not entitled to recover.

██ Under the terms of the sale contract, the timber was to be removed from the land within six months after March 27, 1929. The proceeds from the sale of the timber were to be deposited in a bank agreed upon by the parties. That bank was to place a portion of the proceeds from the sale of the logs to the credit of the respondent. If sales of timber were insufficient to pay the purchase-price of the land, the balance was to be paid by the vendee Hall within one year from March 27, 1929, plus one hundred dollars for each month respondent was required to remain on the premises and supervise farming operations. The respondent had the "privilege of checking sales of timber at all times."

Three hundred thousand feet of logs were removed and sold by the vendee. No duty was imposed upon the broker, nor was he privileged, to inspect the cutting of the timber, to check the sales, or to see that the money was deposited in the bank to the credit of the respective parties to the contract. It was the respondent's duty to check the sales, and to see to it that the respondent's portion of the money was credited to the respondent's account in the bank selected by the vendor and vendee as the depositary of the parties. The vendee cut two hundred thousand feet additional of logs, but was not permitted to market same. The respondent obtained an injunction restraining removal of the logs, and succeeded in his action for cancellation of his contract with Hall.

The respondent is in no position to urge the defense that the contract for five hundred dollars was to be

paid to the broker as proceeds became available from the sale of the timber. While there are now no proceeds, the promise to pay remains. Had respondent exercised his rights under the contract, three hundred dollars would have been available for payment to the broker. When two hundred thousand additional feet of timber was cut, respondent prevented the marketing of that lot of logs. Respondent did not market, and he refused to permit his vendee to market, that second lot of logs.

It is a well recognized principle of law that one who prevents a thing may not avail himself of the nonperformance which he has occasioned. By respondent's failure to collect the amount due to him on the three hundred thousand feet of logs marketed, and by his failure to market the two hundred thousand feet of logs cut, respondent can not deprive the broker of the benefit of his contract.

The judgment is reversed, and the cause remanded with direction to enter judgment in favor of the appellants for the balance of five hundred dollars due on the broker's contract.

TOLMAN, C. J., PARKER, MAIN, HOLCOMB, HERMAN, and BEELER, JJ., concur.

BEALS, J. (dissenting in part)—In my opinion, appellants should recover commission based on the logs cut and marketed, but not on the two hundred thousand feet of logs cut, but not sold. From so much of the opinion of the majority as allows a recovery upon the last mentioned phase of the case, I dissent.